UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

TERWIN ADVISORS LLC, and TERWIN     : **No. 1:07-cv-3647 (JGK) (AJP)**
WAREHOUSE MANAGEMENT LLC, as Program  :
Administrator for and Assignee of TERWIN    : **DECLARATION OF GERALD**
MORTGAGE WAREHOUSE TRUST II, SERIES  : **CASEY IN SUPPORT OF ENTRY**
LVIII,      : **OF DEFAULT JUDGMENT**
    : **AGAINST DEFENDANTS SILVER**
          Plaintiffs,    : **STATE FINANCIAL SERVICES,**
    : **INC., MICHAEL STODDART AND**
    vs.    : **LYNN WOODRUM**
    :

SILVER STATE FINANCIAL SERVICES, INC.,  :
MICHAEL STODDART, and LYNN WOODRUM,  :
    :
          Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, Gerald Casey, am a Principal with Terwin Holdings LLC (d/b/a The Winter Group), an affiliate of plaintiffs Terwin Advisors LLC ("Terwin Advisors") and Terwin Warehouse Management LLC ("Terwin Warehouse"). I am authorized to submit this declaration on behalf of plaintiffs Terwin Advisors and Terwin Warehouse in support of their application for default judgment and in connection with Magistrate Judge Peck's inquest on damages in the above-captioned case. If called upon, I could and would competently testify to the following facts based upon my personal knowledge:

1.    Plaintiff Terwin Advisors is a Delaware limited liability company with its principal place of business at 45 Rockefeller Plaza, Suite 420, New York, New York. Terwin Advisors is in the business of, inter alia, purchasing, selling and securitizing mortgage loans.

2.    Plaintiff, Terwin Warehouse is a Delaware limited liability company with its principal place of business at 45 Rockefeller Plaza, Suite 420, New York, New York. Terwin Warehouse is in the business of, inter alia, purchasing, selling and lending with respect to mortgage loans.

3.     Defendant Silver State Financial Services, Inc. ("Silver State") was, until recently, a mortgage loan originator based outside of Las Vegas, Nevada. Terwin Advisors and Terwin Warehouse entered into contracts with Silver State and its principals Michael Stoddart and Lynn Woodrum. As set forth more fully below, this case is about the financial collapse of Silver State and subsequent breaches by Silver State, Michael Stoddart and Lynn Woodrum of contracts with Terwin Advisors and Terwin Warehouse.

I.     **BACKGROUND**

   A.     **The Terwin Warehouse Purchase Agreement And The Guarantees**

4.     On or about October 12, 2006, Terwin Warehouse as Program Administrator for the Terwin Mortgage Warehouse Trust II, Services LVIII, a series of Terwin Mortgage Warehouse Trust II (the "Trust"), the Trust as Purchaser and Silver State Financial Services, Inc. as Seller and Servicer entered into that certain Seller's Purchase, Warranties and Services Agreement (the "Terwin Warehouse Purchase Agreement"). A true and correct copy of the Terwin Warehouse Purchase Agreement is attached hereto as Exhibit 1.

5.     The Terwin Warehouse Purchase Agreement provides in Section 1.01 that "[t]he duties, rights and obligations of the Purchaser [the Trust] hereunder shall from time to time be performed or enforced, as applicable, by the Program Administrator [Terwin Warehouse] . . . ." Accordingly, Terwin Warehouse brings its claims in this action as Program Administrator and assignee of the Trust's claims against Silver State to enforce the rights of the Trust against Silver State. Such assignment is expressly permitted by Section 13.12 of the Terwin Warehouse Purchase Agreement.

6.     Pursuant to the Terwin Warehouse Purchase Agreement, the Trust agreed to purchase and Silver State agreed to sell, certain mortgage loans.

7.     In connection with the Terwin Warehouse Purchase Agreement, Silver State's

principals Michael Stoddart and Lynn Woodrum personally guaranteed Silver State's obligations under the contract. Specifically, on or about October 12, 2006, defendant Michael Stoddart and the Trust entered into that certain guaranty (the "Stoddart Guaranty"). A true and correct copy of the Stoddart Guaranty is attached hereto as Exhibit 2.

8.      In addition, on or about October 12, 2006, defendant Lynn Woodrum and the Trust entered into that certain guaranty (the "Woodrum Guaranty"). A true and correct copy of the Woodrum Guaranty is attached hereto as Exhibit 3.

9.      On and after October 12, 2006, the Trust did purchase a substantial number of mortgage loans from Silver State pursuant to the Terwin Warehouse Purchase Agreement.

### B.      The Terwin Advisors Purchase Agreement

10.     On or about March 1, 2004, Terwin Advisors as Purchaser and Silver State as Seller and Servicer entered into that Certain Seller's Purchase, Warranties and Interim Servicing Agreement (as amended, the "Terwin Advisors Purchase Agreement"). A true and correct copy of the Terwin Advisors Purchase Agreement is attached hereto as Exhibit 4.

11.     Pursuant to the Terwin Advisors Purchase Agreement, Terwin Advisors agreed to purchase, and Silver State agreed to sell, certain mortgage loans. In addition, pursuant to the Terwin Advisors Purchase Agreement. Again, Silver State used the Terwin Advisors Purchase Agreement to finance its mortgage originations.

12.     Silver State agreed to interim service the mortgage loans Terwin Advisors purchased. On and after March 1, 2004, Terwin Advisors did purchase a substantial number of mortgage loans from Silver State pursuant to the Terwin Advisors Purchase Agreement.

### C.      Silver State Goes Out Of Business

13.     In February 2007, Silver State informed Terwin Warehouse that it was having financial problems, was unable to pay its debts as they became due and that it intended to shut its

doors and go out of business.

      14.    Silver State did, in fact, go out of business on or about February 14, 2007.

## II.    DEFENDANTS' BREACHES OF CONTRACT

### A.    Silver State's Breach Of The Terwin Warehouse Purchase Agreement

      15.    Pursuant to Section 7.02(xii) of the Terwin Warehouse Purchase Agreement, an Event of Default shall have occurred if any Material Adverse Effect occurs. Pursuant to the terms of the Terwin Warehouse Purchase Agreement, a Material Adverse Effect is deemed to have occurred when any other event occurs which could have a material adverse effect upon the validity, performance or enforceability of the Terwin Warehouse Purchase Agreement, or upon the properties, business or condition, financial or otherwise, of Silver State.

      16.    Silver States' financial collapse constitutes an Event of Default under the Terwin Warehouse Purchase Agreement.

      17.    By letter dated February 15, 2007, Terwin Warehouse provided Silver State with Notice of its Default of the Terwin Warehouse Purchase Agreement

### B.    Stoddart's and Woodrum's Breaches of the Guarantees

      18.    Pursuant to Section 1.1 of the Stoddart Guaranty, Mr. Stoddart promised to unconditionally and irrevocably guarantee to the Trust in an unlimited amount the due and punctual payment and/or performance of all of Silver States' obligations under the Terwin Warehouse Purchase Agreement.

      19.    Pursuant to Section 1.1 of the Woodrum Guaranty, Mr. Woodrum promised to unconditionally and irrevocably guarantee to the Trust in an unlimited amount the due and punctual payment and/or performance of all of Silver States' obligations under the Terwin Warehouse Purchase Agreement.

C.    **Silver State's Breach of the Terwin Advisors Purchase Agreement**

20.    Pursuant to Section 3.05 of the Terwin Advisors Purchase Agreement, Silver State contracted to repurchase any mortgage loan (the "Repurchase Obligation") if (a) a mortgagor was thirty (30) days or more delinquent with respect to any of the first three (3) monthly payments due on the related mortgage loan immediately following the date Terwin Advisors purchased the mortgage loan or (b) a mortgage loan was in bankruptcy or litigation within the first three (3) months immediately following the date Terwin Advisors purchased the mortgage loan (collectively an "Early Payment Default").

21.    In fact, a number of mortgage loans Terwin Advisors purchased from Silver State were subject to Early Payment Default pursuant to Section 3.05 of the Terwin Advisors Purchase Agreement.

22.    Terwin Advisors provided written notice to Silver State of the Early Payment Defaults and demanded that Silver State satisfy its Repurchase Obligation pursuant to Section 3.05 of the Terwin Advisors Purchase Agreement.

23.    Despite such written demand, Silver State has not repurchased the Early Payment Default mortgage loans.  Silver State's failure to repurchase the Early Payment Default mortgage loans constitutes a breach of the Terwin Advisors Purchase Agreement.

24.    Silver State has also breached the Terwin Advisors Purchase Agreement by failing to compensate Terwin Advisors for mortgage loans that were fully paid off early.

25.    More specifically, pursuant to Section 3.06 of the Terwin Advisors Purchase Agreement, Silver State contracted to provide certain purchase price protection (the "Purchase Price Protection") to Terwin Advisors in the event any first lien mortgage loan prepaid in full at any time prior to the fourth payment due date immediately following the date Terwin Advisors purchased such mortgage loan and/or with respect to any second lien mortgage loan in the event

such mortgage loan prepaid in full during the twelve (12) month period from and after the date Terwin Advisors purchased such mortgage loan (collectively, "Early Prepayment In Full").

26.    Pursuant to Section 3.06 of the Terwin Advisors Purchase Agreement, in the event of an Early Prepayment In Full, Silver State contracted to reimburse Terwin Advisors the Purchase Price Protection pursuant to a formula set forth in Section 3.06 of the Terwin Advisors Purchase Agreement.

27.    In fact, a number of mortgage loans Terwin Advisors purchased from Silver State were subject to Early Prepayment In Full.

28.    Silver State has not reimbursed Terwin Advisors the Purchase Price Protection for the Early Prepayment In Full mortgage loans as required by the Terwin Advisors Purchase Agreement. Silver State's failure to reimburse Terwin Advisors the Purchase Price Protection for the Early Prepayment In Full mortgage loans constitutes a breach of the Terwin Advisors Purchase Agreement.

III.    **PLAINTIFFS ARE ENTITLED TO ENTRY OF DEFAULT JUDGMENT**

29.    Terwin Warehouse and Terwin Advisors commenced this action on May 7, 2007 by filing their complaint against Silver State, Michael Stoddart and Lynn Woodrum. A true and correct copy of the May 7, 2007 complaint in this action is attached to the Declaration of Matthew J. Borger as Exhibit 1.

30.    On July 31, 2007, Judge Koeltl entered an Order stating Terwin Warehouse and Terwin Advisors are entitled to entry of a Default Judgment against defendants Silver State, Stoddart and Woodrum. A true and correct copy of Judge Koeltl's July 31, 2007 Order is attached to the Declaration of Matthew J. Borger as Exhibit 2.



6

## IV.     PLAINTIFFS' DAMAGES

### A.     Terwin Warehouse's Damages Against Silver State

31.     At my direction, and subject to my supervision, I have had a spreadsheet prepared which itemizes in detail the damages Terwin Warehouse has suffered because of Silver State's breach of the Terwin Warehouse Purchase Agreement.  The spreadsheet itemizing Terwin Warehouse's damages based on Silver State's breach of the Terwin Warehouse Purchase Agreement is attached hereto as Exhibit 5.  The spreadsheet attached as Exhibit 5 was created using Terwin Warehouse's business records and computer software systems.

32.     After Silver State breached the Terwin Warehouse Purchase Agreement by going out of business, Terwin Warehouse acted promptly in a commercially reasonable manner and liquidated the amounts owed to Terwin Warehouse by Silver State.

33.     As set forth more fully on the spreadsheet attached as Exhibit 5, on February 22, February 26, March 2, March 6, and March 21, 2007 Terwin Warehouse sold certain Silver State mortgages off of the warehouse line.

34.     Exhibit 5 identifies each loan Terwin Warehouse sold by the Terwin Loan Number, the Silver State Loan Number and the Borrower's Last Name.  Exhibit 5 identifies the date the mortgage at issue went onto the Terwin warehouse line and the amount for which Terwin Warehouse purchased the mortgage from Silver State.  Exhibit 5 identifies the date Terwin Warehouse sold the mortgage off the warehouse line and the amount for which the mortgage was sold.  Exhibit 5 identifies the interest and fees owed for the loan as of the date the mortgage was sold and the shortfall difference between the amount Terwin Warehouse purchased the mortgage from Silver State and the amount for which Terwin Warehouse sold the mortgage.

35.     As an example, the first mortgage identified on Exhibit 5 is for a loan to a

7

borrower named Tiglao. The Tiglao mortgage was placed on the warehouse line on January 26, 2007. The principle amount for the Tiglao mortgage was $76,300.00. Terwin Warehouse bought the Tiglao mortgage from Silver State for $71,817.38. After Silver State's breach of the Terwin Warehouse Purchase Agreement on February 14, 2007, Terwin Warehouse sold the Tiglao mortgage off the warehouse line on February 22, 2007 for $71,242.48. On that date, $1,273.20 in interest and fees was owed on the Tiglao mortgage loan. In total, as of February 22, 2007, there was a shortfall on the Tiglao mortgage loan in the amount of $1,848.10.

36.    Terwin Warehouse's damages against Silver State on account of the Tiglao mortgage loan were liquidated on February 22, 2007 in the amount of $1,848.10. I have been advised by my counsel that Silver State also owes Terwin Warehouse prejudgment interest at the statutory rate of 9%. The spreadsheet attached as Exhibit 5 also calculates prejudgment simple interest at the rate of 9% from February 22, 2007 through today's date - August 14, 2007. In total, 178 days have elapsed from the date Silver State's obligation to Terwin Warehouse on account of the Tiglao loan became liquidated. At 9% simple interest, as of today's date, Silver State owes Terwin Warehouse an additional $78.84.

37.    The spreadsheet attached as Exhibit 5 totals the amount owed by Silver State based on its breach of the Terwin Warehouse Purchase Agreement. In total, as of today's date, Silver State owes Terwin Warehouse the principle amount of $956,034.63 plus prejudgment interest at the rate of 9% simple interest in the amount of $51,268.88 for a total amount of $1,007,303.51.

**B.    Terwin Warehouse's Damages Against Michael Stoddart And Lynn Woodrum**

38.    As set forth above, pursuant to Section 1.1 of the Stoddart Guaranty, defendant Michael Stoddart unconditionally and irrevocably guaranteed in an unlimited amount the due and punctual payment of all of Silver States' obligations under the Terwin Warehouse Purchase

8

Agreement. As of today's date, Terwin Warehouse is entitled to damages from Michael Stoddart in the principle amount of $956,034.63 plus prejudgment interest at the rate of 9% simple interest in the amount of $51,268.88 for a total amount of $1,007,303.51.

39.     As set forth above, pursuant to Section 1.1 of the Woodrum Guaranty, defendant Lynn Woodrum unconditionally and irrevocably guaranteed in an unlimited amount the due and punctual payment of all of Silver States' obligations under the Terwin Warehouse Purchase Agreement. As of today's date, Terwin Warehouse is entitled to damages from Lynn Woodrum in the principle amount of $956,034.63 plus prejudgment interest at the rate of 9% simple interest in the amount of $51,268.88 for a total amount of $1,007,303.51.

### C.     Terwin Advisors' Damages Against Silver State

40.     Terwin Advisors is also entitled to damages from Silver State.

#### 1.     Early Payment Default Damages

41.     First, Terwin Advisors has suffered damages based on Silver State's breach of Section 3.05 of the Terwin Advisors Purchase Agreement.

42.     At my direction, and subject to my supervision, I have had a spreadsheet prepared which itemizes in detail the damages Terwin Advisors has suffered because of Silver State's breach of the Terwin Advisors Purchase Agreement. The spreadsheet itemizing Terwin Advisors' damages based on Silver State's breach of the Terwin Advisors Purchase Agreement is attached hereto as Exhibit 6. The spreadsheet attached as Exhibit 6 was created using Terwin Advisors' business records and computer software systems.

43.     As set forth above, pursuant to Section 3.05 of the Terwin Advisors Purchase Agreement, Silver State contracted to repurchase any mortgage loan subject to an Early Payment Default.

44.     Exhibit 6 identifies each Terwin Advisors mortgage subject to Early Payment

9

Default by Terwin Loan Number, Silver State Loan Number and the Borrower's Last Name. Exhibit 6 identifies the principle balance on the mortgage loan as of August 13, 2007. Exhibit 6 identifies the date that interest on the mortgage loan has been paid through and the interest rate on the mortgage loan at issue. Exhibit 6 identifies the price Terwin Advisors paid for the mortgage loan expressed as a percentage of the purchase amount and the premium paid for the loan (if applicable). Exhibit 6 then identifies the days of interest due from the date of last interest payment through August 13, 2007 and the total interest due as of August 13, 2007. Exhibit 6 identifies Silver States' total repurchase obligation for each Early Payment Default mortgage as of August 13, 2007.

45.    For example, the first Early Payment Default mortgage identified on Exhibit 6 is the Guillen mortgage. The principle balance due on that loan as of August 13, 2007 is $194,300.00. Interest on that mortgage loan was paid through March 1, 2007. The interest rate on that mortgage loan is 6.88%. A premium in the amount of $2,307.00 was paid for the Guillen mortgage. A total of $6,011 in interest is due on the Guillen mortgage as of August 13, 2007. The total due from Silver State in satisfaction of its obligation to repurchase the Guillen mortgage as of August 13, 2007 is $202,618.00.

46.    The total damages Terwin Advisors has suffered based on Silver States' breach of the repurchase obligation for Early Payment Default mortgages in Section 3.05 of the Terwin Advisors Purchase Agreement is $2,898,447.19.

47.    In some situations, Terwin Advisors, in its business judgment has sold Early Payment Default mortgages or liquidated Early Payment Default mortgages. Page 3 of Exhibit 6 identifies fourteen (14) Early Payment Default mortgage loans Terwin Advisors sold.

48.    Pursuant to Section 8.01 of the Terwin Advisors Purchase Agreement, Silver State is obligated to make Terwin Advisors whole for any loss Terwin Advisors suffers after

10

selling any Early Payment Default mortgage.

49.    For Early Payment Default mortgage loans that were traded, Exhibit 6 identifies

the mortgage by Terwin Loan Number, Silver State Loan Number and the Borrower's Last

Name. Exhibit 6 identifies the principle balance of the mortgage loan as of the date the loan was

sold. Exhibit 6 identifies the price Terwin Advisors paid for the loan expressed as a percentage

of the purchase amount and the sale price of the loan expressed as a percentage of the purchase

amount. The difference between what Terwin Advisors paid for the loan and what Terwin

received for selling the loan is the amount due from Silver State. In addition, I have been

advised by my counsel that Terwin Advisors is entitled to 9% simple interest from the date the

mortgage loan was sold. Exhibit 6 also identifies the amount of prejudgment interest that is due

from Silver State.

50.    In total, Terwin Advisors has suffered damages in the amount of $1,458,685.41

plus prejudgment interest at 9% in the amount of $39,273.82 for a total of $1,497,959.23.

51.    In addition, one Early Payment Default mortgage was liquidated in a short sale.

The Odedo property securing the Odedo mortgage loan identified on page 1 of Exhibit 6 was

sold. The proceeds from the Odedo property sale was insufficient to cover the balance due on

the Odedo mortgage.

52.    Again, pursuant to Section 8.01 of the Terwin Advisors Purchase Agreement,

Silver State is obligated to make Terwin Advisors whole for any loss Terwin Advisors suffers on

a mortgage loan. The shortfall amount in the case of the Odedo mortgage was $5,030.67.

### 2.    **Premium Recapture Damages**

53.    As set forth above, Silver State has also breached Section 3.06 of the Terwin

Advisors Purchase Agreement by failing to provide the applicable Purchase Price Protection.

Specifically, seven (7) loans Terwin Advisors purchased pursuant to the Terwin Advisors

Purchase Agreement were prepaid in full before Terwin Advisors was able to recoup the premium amount Terwin Advisors paid for those loans.

54.    Page 2 of Exhibit 6 identifies the mortgage loans subject to Terwin Advisors' Section 3.06 Premium Recapture Claim by Terwin Loan Number, Silver State Loan Number and the Borrower's Last Name. Exhibit 6 identifies the date Terwin Advisors purchased the loan, the lien position (all seven loans were second mortgages) and the amount purchased. Exhibit 6 identifies the date the loan was paid off, the original premium amount Terwin Advisors paid and the number of months Terwin held the loans (rounded down). Again, pursuant to Section 3.06 of the Terwin Advisors Purchase Agreement, Terwin Advisors' Premium Recapture Claim applies to any second mortgage that prepays in full sooner than one year from the time Terwin Advisors purchased such loan. Thus, Exhibit 6 identifies the Premium Recapture amount due based on the number of months Terwin Advisors owned the mortgage loan and the corresponding number of months remaining in the Premium Recapture period. Again, I have been advised by my counsel that Terwin Advisors is entitled to 9% statutory prejudgment interest from the date the loans were paid off to today's date. Thus, Exhibit 6 also calculates prejudgment interest at 9%.

55.    The total principle amount of damages Terwin Advisors has suffered based on Silver State's breach of Section 3.06 of the Terwin Advisors Purchase Agreement is $5,520.29 plus prejudgment interest at 9% in the amount of $231.63 for a total of $5,751.92.

**D.    Attorneys' Fees And Costs**

56.    Pursuant to Section 3.07 of the Terwin Warehouse Purchase Agreement, Terwin Warehouse is entitled to its attorneys' fees and costs in this action.

57.    Similarly, pursuant to Section 8.01 of the Terwin Advisors Purchase Agreement, Terwin Advisors is entitled to its attorneys' fees and costs in this action.

58.    A true and correct copy of the invoices from legal counsel in this action (redacted

12

to protect privileged information) are attached to the Declaration of Matthew J. Borger as Exhibit 3.

59.    In total, Terwin Warehouse and Terwin Advisors are entitled to attorneys' fees and costs in the amount of $10,259.96.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
         August 14, 2007

                                        Gerald Casey