# EXHIBIT 1

**Terwin Warehouse Management LLC**

as Program Administrator,

**Terwin Mortgage Warehouse Trust II, Series LVIII,
a series of Terwin Mortgage Warehouse Trust II,
a Delaware statutory trust**
as Purchaser

and

**Silver State Financial Services, Inc.**

as Seller and Servicer

SELLER'S PURCHASE, WARRANTIES AND SERVICING AGREEMENT

Dated as of October 12th, 2006

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS .................................................................................................. 2
    Section 1.01    Defined Terms. ................................................................................ 2
    Section 1.02    General Interpretive Principles. ..................................................... 12

ARTICLE II SERVICING OF MORTGAGE LOANS; RECORD TITLE AND POSSESSION
OF MORTGAGE FILES; BOOKS AND RECORDS; CUSTODIAL AGREEMENT;
DELIVERY OF MORTGAGE LOAN DOCUMENTS ............................................................ 14
    Section 2.01    Purchases. ....................................................................................... 14
    Section 2.02    Purchase Price. ............................................................................... 14
    Section 2.03    Servicing of Mortgage Loans. ....................................................... 16
    Section 2.04    Books and Records; Files. .............................................................. 16
    Section 2.05    Quality Control Procedures. ........................................................... 17
    Section 2.06    Closing. .......................................................................................... 17
    Section 2.07    Delivery of Documents; Initial Purchase of Mortgage Loans. ...... 18
    Section 2.08    Fees. ............................................................................................... 20
    Section 2.09    Duties with Respect to Forward Commitments. ............................ 20

ARTICLE III REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE SELLER
AND THE SERVICER; REPURCHASE; REVIEW OF MORTGAGE LOANS ...................... 22
    Section 3.01    Representations and Warranties Regarding the Seller and the Servicer. ......... 22
    Section 3.02    Representations and Warranties Regarding Individual Mortgage Loans. ......... 22
    Section 3.03    Repurchase. .................................................................................... 22
    Section 3.04    Repurchase of Mortgage Loans With Early Payment Defaults. ..... 23
    Section 3.05    Covenants of Seller. ....................................................................... 23
    Section 3.06    Payment. ........................................................................................ 27
    Section 3.07    Legal Costs. ................................................................................... 27

ARTICLE IV ACCOUNTS ................................................................................................... 28
    Section 4.01    Security Deposit. ............................................................................ 28
    Section 4.02    Top-Up Account. ............................................................................ 28
    Section 4.03    Seller Funding Account. ................................................................. 29
    Section 4.04    Seller Settlement Account. ............................................................. 29
    Section 4.05    Security Interest. ............................................................................ 29
    Section 4.06    Certain Terms of the Accounts. ..................................................... 30

ARTICLE V COLLECTIONS AND DISTRIBUTIONS .......................................................... 31
    Section 5.01    Distributions. ................................................................................. 31
    Section 5.02    Statements to the Purchaser. .......................................................... 32

ARTICLE VI THE SELLER AND THE SERVICER ................................................................ 33
    Section 6.01    Indemnification; Third Party Claims. ............................................ 33
    Section 6.02    Merger or Consolidation of the Seller or the Servicer. .................. 33
    Section 6.03    Transfer ......................................................................................... 34

i

ARTICLE VII SELLER TRIGGER EVENTS , EVENTS OF DEFAULT, TERMINATION ... 35

Section 7.01    Seller Trigger Events............................................................... 35
Section 7.02    Events of Default..................................................................... 35
Section 7.03    Waiver of Defaults. ................................................................. 37
Section 7.04    Seller/Servicer Termination Without Cause; Expiration.................... 38

ARTICLE VIII TAKEOUT SALES; MARGIN CALLS............................................. 39

Section 8.01    Sale of Mortgage Loans to Takeout Investors................................ 39
Section 8.02    Market Value.......................................................................... 40
Section 8.03    Required Sale Event. ............................................................... 40

ARTICLE IX MISCELLANEOUS PROVISIONS .................................................. 42

Section 9.01    Intent of Parties; Security Interest. ............................................ 42
Section 9.02    Amendment. .......................................................................... 43
Section 9.03    Governing Law........................................................................ 43
Section 9.04    Notices.................................................................................. 43
Section 9.05    Severability of Provisions. ........................................................ 43
Section 9.06    Confidentiality of Information. ................................................... 44
Section 9.07    Authority of Program Administrator to Direct................................ 44
Section 9.08    Assignment by Purchaser. ........................................................ 44
Section 9.09    No Partnership........................................................................ 44
Section 9.10    Execution; Successors and Assigns............................................. 44
Section 9.11    Entire Agreement. ................................................................... 45
Section 9.12    MERS. .................................................................................. 45
Section 9.13    Power of Attorney. .................................................................. 45
Section 9.14    Trustee Capacity of Owner Trustee............................................. 45
Section 9.15    Submission to Jurisdiction......................................................... 46

SCHEDULES AND EXHIBITS

| | |
|---|---|
| Schedule 1. | Representations, Warranties and Covenants of the Seller and the Servicer |
| Exhibit A. | Contents of Mortgage File |
| Exhibit B. | Mortgage Schedule Required Data Fields |
| Exhibit C. | Insured Closing Protection Letter |
| Exhibit D. | Form of Warehouse Lender Release |
| Exhibit E. | Approved Takeout Investors |

NY1 1021682v9

This is a Seller's Purchase, Warranties and Servicing Agreement, dated as of October 12th, 2006, between Terwin Mortgage Warehouse Trust II, Series LVIII, a series of Terwin Mortgage Warehouse Trust II, a Delaware statutory trust, ("Purchaser"), Terwin Warehouse Management LLC, a Delaware limited liability company, ("Program Administrator"), and Silver State Financial Services, Inc., a Nevada Corporation ("Seller") and as servicer (in such capacity, the "Servicer").

## W I T N E S S E T H:

WHEREAS, the Purchaser agrees to purchase from the Seller and the Seller agrees to sell to the Purchaser certain Mortgage Loans, together with the servicing rights associated with such Mortgage Loans, from time to time, pursuant to the terms of this Agreement.

WHEREAS, the Mortgage Loans as described herein shall be delivered as single loans or in groups of whole loans (each delivery, a "Mortgage Loan Package") on various dates as provided herein (each, a "Closing Date"); and

WHEREAS, the parties wish to prescribe the representations and warranties of the Seller with respect to itself and the Mortgage Loans and the management, interim servicing, transfer and control of the Mortgage Loans by the Servicer; and

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

ARTICLE I

DEFINITIONS

Section 1.01        Defined Terms.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the following meaning specified in this Article.

Accepted Servicing Practices:   With respect to any Mortgage Loan, those mortgage servicing practices (including collection procedures) of prudent mortgage banking institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, and which are in accordance with Fannie Mae servicing practices and procedures, for MBS pool mortgages, as defined in the Fannie Mae Guides (which by their terms incorporate future updates).

Account:  Any account required to be created hereunder.

Additional Mortgage Loans:  Has the meaning set forth in Section 8.02.

Adjusted Purchase Price:   As of any date of determination in respect of any Purchase, the excess of (i) the Purchase Price with respect thereto over (ii) all payments of principal actually received by the Purchaser in respect of the related Mortgage Loans on or prior to such date (which shall not include any scheduled principal payments on the related Mortgage Loans that are retained by the Seller pursuant to Section 5.01(e) hereunder).

Adjusted Takeout Proceeds:   With respect to any Mortgage Loan, means the Takeout Proceeds less any Administrative Costs incurred in connection with such Mortgage Loan.

Administrative Costs:  The fees, charges and expenses listed in the Pricing Side Letter.

Advance Submission Documents:   With respect to any Mortgage Loan, the Closing Instruction Letter, the Data File, the Insured Closing Protection Letter, evidence of closing attorney errors and omissions insurance, the Forward Commitment and any other documents the Program Administrator may request in its sole discretion.

Affiliate:   With respect to any Person, any other Person directly or indirectly controlling, controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person, means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

2

Aggregate Adjusted Purchase Price: As of any date of determination, the aggregate of the Adjusted Purchase Prices of Mortgage Loans currently held by the Purchaser hereunder.

Agreement: This Seller's Purchase, Warranties and Servicing Agreement including all exhibits hereto, amendments hereof and supplements hereto.

Applicable Percentage: Has the meaning set forth in the Pricing Side Letter.

Applicable Rate: With respect to any Mortgage Loan and any date of determination, the Applicable Rate shall equal LIBOR plus the amount set forth in the Pricing Side Letter.

Approved Closing Agent: A closing agent on a list approved by the Program Administrator for closing Mortgage Loans, as such list may be modified from time to time by the Program Administrator.

Approved Takeout Investor: A party that has executed a Forward Commitment, which party is on the list of Takeout Investors set forth in Exhibit E hereto.

Assignment: An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the transfer of the Mortgage.

Available Amount: As of any date of determination, the Available Amount set forth in the Pricing Side Letter, less the Aggregate Adjusted Purchase Price on such date.

Business Day: Any day other than (i) a Saturday or a Sunday, or (ii) a legal holiday in the States of Maryland, Delaware or New York, or (iii) a day on which banks in the States of Maryland, Delaware or New York are authorized or obligated by law or executive order to be closed.

Closing Date: With respect to the Mortgage Loans listed on the related Mortgage Loan Schedule with respect to the related Mortgage Loan Package, means the date of payment by the Purchaser to the Seller of the Purchase Price.

Collateral: Has the meaning set forth in Section 9.01 herein.

Commitment Fee: The amount set forth in the Pricing Side Letter.

Co-op Lease: With respect to a Co-op Loan, the lease with respect to a dwelling unit occupied by the Mortgagor and relating to the stock allocated to the related dwelling unit.

Co-op Loan: A Mortgage Loan secured by the pledge of stock allocated to a dwelling unit in a residential cooperative housing corporation and a collateral assignment of the related Co-op Lease.

3

NY1 1021682v9

Co-op Stock:  With respect to a Co-op Loan, the single outstanding class of stock, partnership interest or other ownership instrument in the related residential cooperative housing corporation.

Custodial Account:  Each separate demand account or accounts created and maintained pursuant to Section 5.01.

Custodian:  Wachovia Bank, National Association.

Cut-off Date: With respect to each Mortgage Loan Package, the date set forth in the Pricing Side Letter.

Data File:  The numbered items set forth in the definition of Mortgage Loan Schedule.

Defective Mortgage Loan:  A Mortgage Loan as to which any representation or warranty contained herein is inaccurate or incomplete.

Delivery Period:  With respect to a Wet Funding Mortgage Loan, no later than 2:30 p.m. (New York City Time) five Business Days after the Closing Date.

Determination Date: The 10th day (or if such 10th day is not a Business Day, the Business Day immediately preceding such 10th day) of the month of the related Remittance Date.

Dry Funding:  A Mortgage Loan as to which all Submission Package Documents have been received by the Custodian (on behalf of the Purchaser) as set forth in Section 2.01. The percentage of Dry Funding Mortgage Loans permitted to be purchased pursuant to this Agreement is set forth in the Pricing Side Letter.

Event of Default:  Any one of the conditions or circumstances enumerated in Section 7.02.

Fannie Mae: The Federal National Mortgage Association and its successors in interest.

Fannie Mae Guides:  The Fannie Mae Sellers' Guide and the Fannie Mae Servicers' Guide and all amendments or additions thereto, including, but not limited to, future updates thereof.

FDIC: The Federal Deposit Insurance Corporation or any successor.

Forward Commitment:  A commitment from an Approved Takeout Investor to purchase a Mortgage Loan at a fixed price on a date certain.

Freddie Mac: The Federal Home Loan Mortgage Corporation and its successors in interest.

4

NYI 1021682v9

GAAP:   Generally accepted accounting procedures in the United States of America, consistently applied.

Imputed Interest Amount:  With respect to any Mortgage Loan which has been sold by the Purchaser, the aggregate amount obtained by the daily application of the Applicable Rate to the Adjusted Purchase Price for such Mortgage Loan on a 360-day-per-year basis for the actual number of days in the period from and including the Closing Date to and excluding the Settlement Date for such Mortgage Loan, or the date on which such Mortgage Loan is re-purchased by the Seller pursuant to Section 3.03, as the case may be; provided, however, that no provision of this Agreement shall require the payment or permit the collection of any Imputed Interest Amount in excess of the maximum permitted by applicable law; and provided further, that Imputed Interest Amount shall not be considered paid if at any time payment is rescinded or must be returned for any reason.

Indebtedness: With respect to any Person, shall mean all indebtedness, obligations and liabilities of such Person, contingent or otherwise, direct or indirect and howsoever evidenced or incurred, that should be reflected as a liability on the balance sheet of such Person prepared in accordance with GAAP

Insured Closing Protection Letter:   A document substantially in the form of Exhibit C hereto.

Interim Servicing Period:  As to each Mortgage Loan, the period of time from and including the related Cut-off Date to the related Servicing Transfer Date.

Leverage Ratio:  The ratio of Total Indebtedness divided by Tangible Net Worth.

LIBOR:  For each day, the rate of interest per annum for dollar deposits with a duration of one month on Bloomberg page BTMM at about 11:00 A.M. (London time) on such day (or, if such day is not a LIBOR Business Day, on the next preceding LIBOR Business Day) or, if that page ceases to display the necessary information, then whatever page replaces it on that service for the purpose of displaying that information (the "Bloomberg Rate").  If the Bloomberg Rate cannot be determined then the LIBOR Rate means the arithmetic average of the rates of interest offered by two prime banks in the London interbank market (selected by the Program Administrator on behalf of the Purchaser) for dollar deposits with a duration of one month at about 11:00 A.M. (London time) on the LIBOR Business Day prior to such day.

LIBOR Business Day:  Any day on which banks in London and The City of New York are open and conducting transactions in foreign currency and exchange.

Losses:  Any and all losses, claims, damages, liabilities or expenses (including reasonable attorneys' fees and disbursements) incurred by any person specified in this Agreement for principal, interest or otherwise, resulting from transactions entered into under this Agreement (other than liability for taxes).  Losses must be accounted for and documented in reasonable detail when presented for reimbursement.

Loan Quarter:  Each consecutive three month period commencing on the date hereof.

NY1 1021682v9

Margin Call:  Has the meaning set forth in Section 8.02.

Margin Deficit:  Has the meaning set forth in Section 8.02.

Market Value:  With respect to any Uncovered Mortgage Loans as of any date, the whole-loan servicing released fair market value (expressed as a dollar amount) of such Uncovered Mortgage Loans on such date as determined by the Program Administrator in its sole discretion.

Market Value Price:  With respect to any Uncovered Mortgage Loan as of any date, the whole-loan servicing released fair market value (expressed as a percentage of the Scheduled Principal Balance) of such Uncovered Mortgage Loan on such date as determined by the Program Administrator in its sole discretion.

Material Adverse Effect:  Means (i) a judgment or decree is entered against the Seller involving claims not fully covered by insurance and such judgment or decree shall not have been vacated, discharged, or stayed or bonded pending appeal within 10 days from entry thereof; or (ii) any governmental license, authorization or permit held by the Seller which is necessary for the lawful conduct of the Seller's business is revoked, suspended, not renewed or subjected to any restriction or condition limiting the conduct of the Seller's business as now, or as proposed to be conducted; or (iii) any agency, or private investor, or any other party shall seize or take control of the Seller's servicing, owned or pipeline portfolio for breach of any agreement applicable to such portfolio, or for any other reason whatsoever; or (iv) any other event occurs which could, as determined by the Program Administrator in its sole discretion, have a material adverse effect upon the validity, performance or enforceability of this Agreement, or upon the properties, business or condition, financial or otherwise, of the Seller.

Maximum Purchase Amount:  That limit set forth in the Pricing Side Letter.

MERS:  Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

Mortgage:  With respect to a Mortgage Loan that is not a Co-op Loan, the mortgage, deed of trust or other instrument securing a Mortgage Note which creates a first or second lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note; except that with respect to real property located in jurisdictions in which the use of leasehold estates for residential properties is a widely-accepted practice, the mortgage, deed of trust or other instrument securing the Mortgage Note may secure and create a first or second lien upon a leasehold estate of the Mortgagor.  With respect to a Co-op Loan, the related Security Agreement.

Mortgage File:  With respect to each Mortgage Loan, the documents pertaining thereto specified in Exhibit A (including the Forward Commitment, except with respect to each Uncovered Mortgage Loan) and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

Mortgage Loan:  An individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified

6

on the Mortgage Loan Schedule, which Mortgage Loan includes without limitation the Mortgage File, all scheduled and unscheduled payments due and received under such Mortgage Loan, any REO property, any escrow accounts related to the Mortgage Loan, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan, excluding mortgage loans replaced or repurchased in accordance herewith.

Mortgage Loan Documents:  The documents required to be contained in a Mortgage File as set forth in Exhibit A hereto.

Mortgage Loan Package: As defined in the Recitals to this Agreement.

Mortgage Loan Schedule:  A computer-readable transmission in a standardized text format delivered by the Seller to (x) the Program Administrator on behalf of the Purchaser and (y) the Custodian incorporating the Required Data Fields identified on Exhibit B hereto with respect to each Mortgage Loan in the related Mortgage Loan Package.

Mortgage Note:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property:  With respect to a Mortgage Loan that is not a Co-op Loan, the underlying real property securing repayment of a Mortgage Note, consisting of a fee simple parcel of real estate or a leasehold estate, the term of which is equal to or longer than the term of the related Mortgage Note.  With respect to a Co-op Loan, the related Co-op Stock and Co-op Lease securing the indebtedness of the Mortgagor under the related Mortgage Loan.

Mortgagor:  The obligor on a Mortgage Note.

Person:  Any individual, corporation, partnership, joint venture, association, limited liability company, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Pricing Side Letter:  The Pricing Side Letter dated as of the date hereof, among the Purchaser, the Program Administrator, the Seller and the Servicer.

Prime Rate:  The prime rate announced to be in effect from time to time as published as the average rate in The Wall Street Journal (Northeast Edition) (or, if more than one such rate is published, the average of such rates).

Principal:  Means any Person owning 10% of more of the Seller's equity and any executive officer of the Seller.

Projected Loss:  As defined in the definition of "Seller Trigger Event".

Purchase:  Any purchase of Mortgage Loans pursuant to Section 2.01.

Purchase Price:  As defined in Section 2.02.

NYI 1021682v9

Purchase Price Percentage:  With respect to any Purchase, the percentage set forth in the Pricing Side Letter.

Purchase Request:  An electronic request in a format acceptable to the Program Administrator by the Seller for the Purchase of Mortgage Loans submitted to the Program Administrator which request shall include the Mortgage Loan Schedule to be included in the Mortgage Loan Package, the related Data Files and the proposed Closing Date.

Purchaser:  Terwin Mortgage Warehouse Trust II, Series LVIII, a series of Terwin Mortgage Warehouse Trust II, a Delaware statutory trust, its successors in interest and assigns.  The duties, rights and obligations of the Purchaser hereunder shall from time to time be performed or enforced, as applicable, by the Program Administrator or other parties designated by the Purchaser, in each case without the requirement of notice to the Seller of such designation.

Put Back Loan:  Any Mortgage Loan that has been put back to the Seller after the Settlement Date for any reason, including, without limitation, a violation of any covenant, representation or warranty set forth in this Agreement, the related Forward Commitment or the related mortgage loan purchase agreement with the Takeout Investor, and which has not been cured to the satisfaction of the Approved Takeout Investor or the Program Administrator if applicable.

Put Back Loan Ratio:  The ratio, calculated on a monthly basis, the numerator of which is the sum of the unpaid principal balances of all Mortgage Loans that were put back by all Approved Takeout Investors to the Seller during such month and the denominator of which is the sum of the unpaid principal balances of all Mortgage Loans that were purchased by and delivered to or have received Forward Commitments from all Approved Takeout Investors during such month.

Regulatory Authority:  With respect to any Person means any governmental or quasi-governmental department, commission, board, regulatory authority, bureau, agency or instrumentality, domestic, foreign, federal, state or municipal (including, without limitation, the OTS, FDIC, SEC or the NASD), any court or arbitration panel, or any private body having regulatory jurisdiction over such Person or its business or assets (including any insurance company or underwriter through whom such Person has obtained insurance coverage).

Remittance Date:  With respect to all scheduled principal and interest payments received, the 15th day of each month, (or if such day is not a Business Day, the first Business Day thereafter), (except as otherwise provided herein).  With respect to all unscheduled principal payments received, each Business Day (except as otherwise provided herein).

Repurchase Price:  With respect to any Mortgage Loan and as of any date of determination, (i) the Imputed Interest Amount; plus (ii) the Adjusted Purchase Price; plus (iii) third party fees and expenses incurred in connection with the transfer of the Mortgage Loan being repurchased or the enforcement of the obligations of the Seller under Sections 3.03, 3.04 and 3.05 in each case as of such date.

Required Insurance Amount:  Has the meaning set forth in the Pricing Side Letter.

8

Required Sale Event: As defined in Section 8.03 hereof.

Requirement of Law: With respect to any Person means any law, ordinance, requirement, order, direction, rule, regulation, decision, ruling, writ, injunction, instruction, resolution, decree, or other similar document, instrument or directive, whether currently existing or promulgated hereafter, of any Regulatory Authority, or any requirement of the organizational documents of such Person.

Scheduled Principal Balance: As to each Mortgage Loan, (i) the principal balance of such Mortgage Loan at the Cut-off Date after giving effect to (x) payments of principal due on or before such date, whether or not received, and (y) all unscheduled collections of principal actually received prior to the Cut-off Date minus (ii) all amounts previously distributed to the Purchaser with respect to the Mortgage Loan representing payments or recoveries of principal or advances in lieu thereof.

Security Agreement: With respect to a Co-op Loan, the agreement or mortgage creating a security interest in favor of the originator of the Co-op Loan in the related Co-op Stock.

Security Deposit Amount: Has the meaning set forth in Section 4.01 hereof.

Seller Concentration Sublimits: The eligibility requirements established by the Program Administrator on behalf of the Purchaser with respect to its willingness to acquire categories of Mortgage Loans from the Seller, as the same shall be set forth in the Pricing Side Letter, as amended from time to time.

Seller Funding Account: Each separate trust account or accounts created and maintained by the Purchaser's designee in furtherance of the terms hereof.

Seller Settlement Account: Each separate trust account or accounts created and maintained by the Purchaser's designee in furtherance of the terms hereof.

Seller Trigger Event: Any one of the following conditions or circumstances:

(i)     The Settlement Date for a Mortgage Loan has not occurred within 45 days of the related Closing Date (or such later date as extended by the Program Administrator pursuant to Section 8.03).

(ii)    A Forward Commitment is not provided with respect to an Uncovered Mortgage Loan within 10 days of the related Closing Date.

(iii)   Failure of the Seller to deliver the Submission Package Documents with respect to a Wet Funding within the Delivery Period or any other error with respect to any Submission Package Documents, which is not cured within five Business Days.

(iv)    When the aggregate Purchase Price plus interest thereon at the Applicable Rate exceeds (a) with respect to any Mortgage Loans

9

which are subject to a Forward Commitment, the aggregate Adjusted Takeout Proceeds of the Mortgage Loans listed on the related Mortgage Loan Schedule and (b) with respect to any Uncovered Mortgage Loans, the aggregate Market Value of the Mortgage Loans listed on the related Mortgage Loan Schedule, less any associated Administrative Costs (such excess, the "Projected Loss").

(v)     The Seller has not repurchased a Put Back Loan from the applicable Approved Takeout Investor within two Business Days of such a request by the Approved Takeout Investor.

(vi)     Failure of the Seller to maintain a Takeout Commitment Ratio during any month which is more than the amount set forth in the Pricing Side Letter.

(vii)     Failure of the Seller to satisfy a Margin Deficit.

(viii)     At the close of business on any day, the amount on deposit in the Top-Up Account is less than the Security Deposit Amount.

(ix)     An Event of Default has occurred and is continuing.

(x)     Breach of a financial covenant set forth in the Pricing Side Letter, or any Seller Concentration Sublimit set forth in the Pricing Side Letter.

Seller's Officers' Certificate:  A certificate, substantially in the form of Exhibit I hereto, delivered to the Purchaser or its designee as required by this Agreement.

Servicer:  With respect to each Mortgage Loan, the Seller or another entity designated as servicer and approved by the Purchaser and the Program Administrator.

Servicing Transfer Date:  The date on which the responsibility for the servicing of the Mortgage Loans transfers from the Servicer to the Purchaser or its designee.

Settlement Date:  With respect to any Mortgage Loan, means the Business Day following the day on which the applicable Takeout Proceeds are received by the Purchaser (or its designee) from a Takeout Investor as confirmed by receipt of the related Settlement Information.

Settlement Information:  A written advice or group of written advices which shall identify each Mortgage Loan (by the Mortgagor's surname) that the Takeout Investor acquires on a certain Business Day and confirming the amount of Takeout Proceeds allocable to each such Mortgage Loan.

Shortfall Premium:  The fee set forth in the Pricing Side Letter calculated on the daily average Available Amount.

Submission Package Documents:  With respect to any Mortgage Loan, the

10

applicable documents required to be included in the Mortgage File designated on Exhibit A, each in form and substance satisfactory to the Program Administrator on behalf of the Purchaser in its sole discretion.

Takeout Commitment Ratio:  The ratio, calculated monthly on all Mortgage Loans subject to a Forward Commitment which was scheduled to settle in such month, the numerator of which is the outstanding principal balance of all such Mortgage Loans so having a Forward Commitment scheduled to settle in such month which in fact settled with the related Approved Takeout Investor during such month, and the denominator of which is the outstanding principal balance of all such Mortgage Loans so having a Forward Commitment scheduled to settle in such month.

Takeout Investor Relationship: As defined in Section 3.05(l).

Takeout Price:   With respect to any Mortgage Loan subject to a Forward Commitment, the price of such Mortgage Loan (expressed as a percentage) specified on the Forward Commitment, which is required to be set forth on the Mortgage Loan Schedule.

Takeout Proceeds: The amount of funds a purchaser (either an Approved Takeout Investor or other purchaser identified by the Program Administrator) pays the Purchaser with respect to a Mortgage Loan.

Tangible Net Worth: At the time of such determination, the excess of total assets over total liabilities, each to be determined in accordance with GAAP, excluding, however, from the determination of total assets, all assets which would be classified as intangible assets under GAAP, including, without limitation, goodwill, licenses, patents, trademarks, copyrights and franchises and any non-acceptable assets as determined by HUD, and including in the determination of total liabilities the Aggregate Adjusted Purchase Price.

Termination Date:  The earlier of (i) 364 days from the date of the first Purchase hereunder and (ii) the occurrence of an Event of Default hereunder.

Top-Up Account: Each separate trust account or accounts created and maintained by the Purchaser's designee in furtherance of the terms hereof.

Total Indebtedness: At any date, means all items (other than capital stock, capital surplus, retained earnings, deferred taxes and deferred credits) of Indebtedness as at the date on which Total Indebtedness is to be determined.

Uncommitted Availability:  That portion of the Available Amount that may be held by the Purchaser hereunder as Uncovered Mortgage Loans, not to exceed the amount set forth in the Pricing Side Letter.

Uncovered Mortgage Loan:  Any Mortgage Loan with respect to which the Seller does not have a Forward Commitment.

Underwriting Standards:  As to each Mortgage Loan with respect to which a Forward Commitment exists, the applicable Takeout Investor's written seller and underwriting

NY1 1021682v9

guidelines in effect as of the origination date of the Mortgage Loan(s).  As to each Uncovered Mortgage Loan, The Winter Group's written seller and underwriting guidelines in effect as of the origination date of the Mortgage Loan(s).

Warehouse Funding:  A Purchase of a closed Mortgage Loan which involves the payoff of the related Warehouse Lender.  The percentage of Warehouse Funding Mortgage Loans permitted to be purchased pursuant to this Agreement is set forth in the Pricing Side Letter.

Warehouse Lender:  Any lender providing financing to the Seller for the purpose of originating or purchasing Mortgage Loans, which lender, prior to the related Closing Date, has a security interest in such Mortgage Loans as collateral for the obligations of the Seller to such lender.

Warehouse Lender Release:  A letter in the form of Exhibit D from a Warehouse Lender to the Purchaser.

Wet Funding:  A Mortgage Loan that is being closed with the Mortgagor on the Closing Date therefor and accordingly, as to which Advance Submission Documents are sent to Custodian prior to 2:30 p.m. (New York City time) on the related Closing Date.  The percentage of Wet Funding Mortgage Loans permitted to be purchased pursuant to this Agreement is set forth in the Pricing Side Letter.

Section 1.02        General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(i)      the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(ii)     accounting terms not otherwise defined herein have the meanings assigned to them in accordance with GAAP;

(iii)    references to "Articles," "Sections," Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(iv)     a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, this rule shall also apply to Paragraphs and other subdivisions;

(v)      the words "herein," "hereof," "hereunder," and other words of similar import refer to this Agreement as a whole, not to any particular provision;

(vi)     the term "include" or "including" shall mean without limitation by reason of enumeration; and

12

(vii)    headings of the Articles and Sections in this Agreement are for reference purposes only and shall not be deemed to have any substantive effect.

NY1 1021682v9

ARTICLE II

SERVICING OF MORTGAGE LOANS;
RECORD TITLE AND POSSESSION OF MORTGAGE FILES;
BOOKS AND RECORDS; CUSTODIAL AGREEMENT;
DELIVERY OF MORTGAGE LOAN DOCUMENTS

Section 2.01        Purchases.

(a) The Seller may sell and the Purchaser may agree to purchase (under the terms and conditions and subject to the limitations set forth herein) on each requested Closing Date (or the following Business Day if all Submission Package Documents, or Advance Submission Documents, as the case may be, are not received prior to 2:30 PM (New York City time)) pursuant to this Agreement at the Purchase Price the Mortgage Loans being sold by the Seller and listed on the Mortgage Loan Schedule, together with the servicing rights associated therewith, pursuant to the related Purchase Request; provided that immediately following such purchase the Available Amount would not be less than zero. Each Purchase Request shall contain in an electronic format the Mortgage Loan Schedule for the Mortgage Loans to be purchased on such Closing Date.

(b) On any Business Day, the Seller may initiate a request for purchase pursuant to this Agreement by delivering to the Program Administrator on behalf of the Purchaser and to the Custodian a Purchase Request on the proposed Closing Date which Purchase Request must be received by the Program Administrator and by the Custodian on or prior to 2:30 p.m. (New York City time) on the requested Closing Date. The Program Administrator on behalf of the Purchaser shall indicate its acceptance or declination of each Mortgage Loan included in each Purchase Request electronically, as well as confirm the Purchase Price of each purchased Mortgage Loan. Notwithstanding anything contained herein to the contrary, the Purchaser is under no obligation to purchase any Mortgage Loans or accept any Purchase Request pursuant to this Agreement.

(c) In the case of a Dry Funding, the Seller shall deliver and release to the Custodian all Submission Package Documents no later than 2:30 p.m. (New York City time) on the Closing Date. In the case of a Wet Funding, the Seller shall deliver and release to the Custodian all Advance Submission Documents no later than 2:30 p.m. (New York City time) on the Closing Date, and shall deliver and release to the Custodian all Submission Package Documents within the Delivery Period. Failure to deliver Submission Package Documents with respect to a Wet Funding within the Delivery Period shall be a Seller Trigger Event hereunder.

(d) If the Program Administrator on behalf of the Purchaser does not indicate its acceptance of a Purchase Request electronically prior to 4:00 p.m. (New York City time) on the proposed Closing Date, the Purchaser shall be deemed to have declined such Purchase Request. Notwithstanding the foregoing, at no time will the Purchaser purchase a Mortgage Loan if it would cause the Available Amount to be reduced below zero, or any applicable Seller Concentration Sublimit, to be exceeded or otherwise to fail to be satisfied by the Seller.

14

(e) Each accepted Purchase Request shall be irrevocable and binding on the Purchaser and the Seller. If the Seller shall fail to timely deliver the Mortgage Loans in accordance with the provisions set forth below, then the Seller shall return or cause the related Approved Closing Agent to return to the Purchaser the Purchase Price plus interest thereon at the Applicable Rate.

(f) The Purchaser shall pay the Purchase Price for the Mortgage Loans to be purchased by it hereunder on each Closing Date by wire transfer, according to instructions listed on the related Purchase Request, in immediately available funds to the related Approved Closing Agent's or the related Warehouse Lender's account, as appropriate, not later than 6:00 p.m. (New York City time) on the Closing Date, of an amount in Dollars equal to the aggregate Purchase Price for the Mortgage Loans to be purchased and any additional closing expenses related to such Mortgage Loans on such Closing Date. With respect to each Dry Funding Mortgage Loan that involves a payment to a Warehouse Lender, the Seller shall furnish to the Purchaser or its designee a Warehouse Lender Release, together with wire instructions for the payoff of the Warehouse Lender. With respect to each Dry Funding Mortgage Loan that is a MERS Designated Loan, the Seller shall furnish a MERS report reflecting the Approved Closing Agent, as "Interim Funder" or "Warehouse Gestation Lender" for each such Mortgage Loan.

(g) With respect to each Mortgage Loan purchased hereunder, the Purchaser shall be entitled to (i) the principal portion of all scheduled monthly payments due after the Cut-off Date, (ii) all other recoveries of principal collected on or after the Cut-off Date (provided, however, that the principal portion of all scheduled monthly payments due on or before the Cut-off Date and collected by the Servicer or any successor servicer after the Cut-off Date shall belong to the Seller), (iii) the Takeout Proceeds, and (iv) all payments of interest on the Mortgage Loans (minus that portion of any such payment which is allocable to the period prior to the Cut-off Date).

(h) Pursuant to the terms herein, the Purchaser, from time to time, will deliver the Mortgage Loans, including the Submission Package Documents held by the Custodian, either (i) to an Approved Takeout Investor or (ii) to the Seller for repurchase for as required under this Agreement. Delivery of the Mortgage Loans can only be authorized and requested by the Program Administrator on behalf of the Seller.

(i) A ny delivery request to be made in accordance with paragraph (h) above shall be made, in writing, by the Program Administrator on behalf of the Seller. Upon receipt of such written request by the Program Administrator, the Custodian will utilize the following procedures:

(i) confirm via Electronic Transmission from the Program Administrator that the recipient that has been designated by the Seller is the proper recipient;

(ii) retain the original Assignment of Mortgage and a copy of the Mortgage Note, which documents shall be held by the Custodian on behalf of the Purchaser for 90 days following the Settlement Date or the day the Mortgage Loan was repurchased by the Seller; and

15

NYI 1021682v9

(iii)  at the expense of the Seller, deliver to the party confirmed in paragraph (i) above the related Submission Package Documents by overnight delivery using a nationally recognized overnight delivery service.

Section 2.02         Purchase Price.

The Purchase Price for each Mortgage Loan in a Mortgage Loan Package shall be equal to the Purchase Price Percentage multiplied by the Scheduled Principal Balance of such Mortgage Loan, as of the related Cut-off Date, multiplied by the lesser of (i) 100% and (ii) either (A) the Takeout Price with respect to any Mortgage Loan listed on the related Mortgage Loan Schedule which is subject to a Forward Commitment, or (B) the Market Value Price with respect to any Uncovered Mortgage Loan listed on the related Mortgage Loan Schedule (the "Purchase Price"). The aggregate Purchase Price for the Mortgage Loans in a Mortgage Loan Package will be the sum of the Purchase Prices of each such Mortgage Loan.

The Purchaser may at its discretion at any time without any notice to the Seller deduct from and offset against the Purchase Price any amounts, including escrows, owed by the Seller to the Purchaser in connection with a particular purchase or other transaction.

Section 2.03         Servicing of Mortgage Loans.

The Mortgage Loans will be sold by the Seller to the Purchaser on a servicing released basis. Subject to, and upon the terms and conditions of this Agreement, the Seller hereby transfers, assigns and delivers to the Purchaser or its designee the right to service each such Mortgage Loan sold by it as of such Closing Date.

The Servicer hereby agrees to service each Mortgage Loan during the Interim Servicing Period in accordance with Accepted Servicing Practices and this Agreement.

Section 2.04         Books and Records; Files.

The sale of each Mortgage Loan will be reflected on the Seller's balance sheet and other financial statements as a sale of assets by the Seller to the Purchaser, and the Seller shall account for the Seller's equity investment in the Purchaser and for the Purchaser's status as a subsidiary of the Seller, in accordance with GAAP. The Seller shall maintain a complete set of books and records for the Mortgage Loans sold by it which shall be appropriately identified in the Seller's computer system to clearly reflect the ownership of the Mortgage Loans by the Purchaser.

The Seller shall provide to any supervisory agents or examiners that regulate the Purchaser access, during normal business hours, upon reasonable advance notice to the Seller and at the Seller's expense and without charge to the Purchaser or such supervisory agents or examiners, any documentation regarding the Mortgage Loans that may be required by any applicable regulator.

Any portion of the Mortgage Files retained by the Seller following the sale of the Mortgage Loans shall be appropriately identified in the Seller's computer system to clearly reflect the ownership of the Mortgage Loans by the Purchaser. The Servicer shall release its

16

custody of the contents of the servicing files only in accordance with written instructions of the Program Administrator on behalf of the Purchaser, except when such release is required as incidental to the Servicer's servicing of the Mortgage Loans or is in connection with a repurchase of any Mortgage Loan or Loans with respect thereto pursuant to this Agreement, such written instructions shall not be required.  Servicing files for the Mortgage Loans shall be delivered to the Purchaser or its designee on or before the Servicing Transfer Date.

   Section 2.05     <u>Quality Control Procedures.</u>

   The Seller must have an internal quality control program that verifies, on a regular basis, the existence and accuracy of the legal documents, credit documents, property appraisals, and underwriting decisions.  The program must be capable of evaluating and monitoring the overall quality of its loan production and servicing activities.  The program is to ensure that the Mortgage Loans are originated and serviced in accordance with prudent mortgage banking practices and accounting principles and Accepted Servicing Practices, and to guard against dishonest, fraudulent, or negligent acts and to guard against errors and omissions by officers, employees, or other authorized persons.

   Section 2.06     <u>Closing.</u>

   The closing for the purchase and sale of the Mortgage Loans shall take place on a Closing Date.  The closing shall be either:  by telephone, confirmed electronically, or by letter or wire as the parties shall agree, or conducted in person, at such place as the parties shall agree.

   The closing for the Mortgage Loans to be purchased on each Closing Date shall be subject to each of the following conditions:

    (a)  By 2:30 p.m. (New York City time) on the Closing Date, the Seller shall deliver to the Program Administrator on behalf of the Purchaser a magnetic diskette, or transmit by modem or e-mail, a listing on a loan-level basis of the information contained in the Mortgage Loan Schedule;

    (b)  all of the representations and warranties of the Seller and the Servicer under this Agreement shall be materially true and correct as of such Closing Date or, with respect to representations and warranties made as of a date other than such Closing Date, as of such date, and no event shall have occurred which, with notice or the passage of time, would constitute an Event of Default or other material default under this Agreement;

    (c)  the Purchaser shall have received, or the Purchaser's designee shall have received in escrow, all documents required by and at the times required by Section 2.01, in such forms as are agreed upon and acceptable to the Program Administrator on behalf of the Purchaser, duly executed by all signatories other than the Purchaser as required pursuant to the terms hereof;

NY1 1021682v9

(d)    the Seller and the Servicer shall have delivered and released to the Purchaser (or its designee) on or prior to the Closing Date all documents required pursuant to the terms of this Agreement; and

(e)    all other terms and conditions of this Agreement shall have been materially complied with.

Subject to the foregoing conditions, the Purchaser shall pay to the Seller on the Closing Date the Purchase Price pursuant to Section 2.01 of this Agreement.

Section 2.07        Delivery of Documents; Initial Purchase of Mortgage Loans.

The Seller acknowledges that the information provided by it hereunder may be provided to other parties, including the Purchaser's designee, at the Program Administrator's discretion, in order to evaluate the Seller.

Prior to the initial Purchase of Mortgage Loans:

(a)    The Purchaser or its designee shall have received:

(1) a copy of the resolutions of the Board of Directors of the Seller, in form and substance satisfactory to the Program Administrator, certified by its Secretary or Assistant Secretary approving this Agreement and the sale, from time to time, of the Mortgage Loans as contemplated hereby;

(2) the related organizational documents of the Seller certified by the Secretary of State (or other applicable authority) in the related jurisdiction where the Seller was formed;

(3) certificates of (i) the Secretary or Assistant Secretary of the Seller, in form and substance satisfactory to the Program Administrator, certifying the names and signatures of the officers authorized on its behalf to execute this Agreement, and any other documents to be delivered by it hereunder or thereunder (on which the Purchaser may conclusively rely until such time as the Purchaser shall receive from the Seller a revised certificate meeting the requirements of this item (a)(3)); (ii) the Secretary or Assistant Secretary of the Seller, in form and substance satisfactory to the Program Administrator, certifying that attached to such certificate is a true and correct copy of the Seller's by-laws; and (iii) the Chief Financial Officer and Secondary Marketing Director of the Seller, in form and substance satisfactory to the Program Administrator, certifying certain corporate and financial information regarding the Seller;

(4) an opinion of counsel to the Seller, in form and substance satisfactory to the Program Administrator;

18

(5) (i) financial statements as required under Part II, representation 15 of Schedule 1 hereto, (ii) payment of any fees due by the Seller at the time of execution of this Agreement, and (iii) evidence of existence of all required insurance and licenses of the Seller;

(6) with respect to each Person listed in the Pricing Side Letter as a "Person Required to Execute a Guaranty", a separate Guaranty agreement in form and substance satisfactory to the Program Administrator, executed by such Person;

(7) a fully executed Electronic Tracking Agreement, in form and substance satisfactory to the Program Administrator;

(8) an intercreditor agreement, in form and substance satisfactory to the Program Administrator, executed by the Seller, the Program Administrator and each Person who is a warehouse lender of the Seller.

(b)     All Accounts required pursuant to this Agreement shall have been established by the required party.

Prior to every purchase of Mortgage Loans, the Seller shall have delivered to the Purchaser or its designee:

(1) evidence, satisfactory to the Purchaser, of the transfer of the ownership of the related Mortgage Loans from the Seller to the Purchaser or its designee;

(2) the related Mortgage Note, Mortgage and Assignment of Mortgage, endorsed in blank, and shall have acknowledged, in a manner satisfactory to the Purchaser, that it is holding each such note, mortgage and assignment for the Purchaser as its bailee;

(3) the applicable Forward Commitment with respect to each Mortgage Loan (other than an Uncovered Mortgage Loan);

(4) The Purchaser or its designee shall have completed such investigation as they may reasonably require with respect to each Mortgage Loan which is the subject of such purchase and the results of such investigation (and all other legal and documentary matters with respect to such Mortgage Loan) shall be satisfactory to the Purchaser; *provided, however*, no such investigation will be deemed a waiver of any right of the Purchaser.

(5) such other additional documents requested by the Purchaser in connection with such purchase.

19

The Seller shall pay any fees in connection with the transfer of the Mortgage Loan Documents to the Purchaser or its designee.

With respect to any documents which have been delivered or are being delivered to recording offices for recording and have not been returned to the Seller in time to permit their delivery hereunder at the time required, in lieu of delivering such original documents, the Seller is required to deliver to the Custodian a copy thereof certified by an Approved Closing Agent, title company or escrow closing company as a true, correct and complete copy of the original which has been transmitted for recordation. The Seller is required to deliver such original documents to the Custodian promptly when they are received.

The Servicer shall forward to the Purchaser, or its designee, original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with Accepted Servicing Practices within one week of their execution and shall also provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within five days of its return from the appropriate public recording office.

Section 2.08          Fees.

(a) After the first 180 days of the initial term of this Agreement, if the average daily aggregate Purchase Price of all Mortgage Loans paid for by the Purchaser in any Loan Quarter is less than the Applicable Percentage of the Maximum Purchase Amount, the Seller shall pay the Shortfall Premium to the Purchaser. It is understood that subject to the provisions of subsection 2.08(c), Mortgage Loans rejected by the Purchaser or repurchased by the Seller shall not be included for the purpose of the imposition or calculation of any Shortfall Premium. If any Mortgage Loans are discovered to be Defective Mortgage Loans, then the Purchaser may retroactively re-calculate the Seller's liability for any Shortfall Premium.

(b) The Seller shall pay to the Purchaser the Commitment Fee according to the terms set forth in the Pricing Side Letter.

(c) During the continuance of any Event of Default described in paragraphs (ii), (vi), (viii) or (x) Section 7.02, the Program Administrator on behalf of the Purchaser reserves the right, in its sole discretion, to either reject Mortgage Loans, or increase the Applicable Percentage; if an Event of Default described in any other clause of Section 7.02 occurs, the Purchaser will immediately cease purchasing Mortgage Loans.

(d) The Seller shall pay to the Purchaser, within 10 days after receipt of a statement therefore, any outstanding Administrative Costs.

(e) The Purchaser reserves the right, and the Seller expressly authorizes the Purchaser or its designee, to withdraw any amounts owed by the Seller to the Purchaser, including but not limited to, any Shortfall Premiums, the Commitment Fee and Administrative Costs owed pursuant to this section from any funds in the Top-Up Account.

20

Section 2.09          <u>Duties with Respect to Forward Commitments.</u>

(a) Provided no Event of Default shall have occurred and be continuing, the Seller shall have full power and authority, acting alone, to do or cause to be done, to the extent necessary, any and all things that it may deem necessary and desirable in connection with arranging for and executing the sale of Mortgage Loans pursuant to a Forward Commitment.

(b) With respect to each sale to an Approved Takeout Investor, the Seller agrees:

(i)        to cooperate fully with the Purchaser, the Program Administrator, the Takeout Investor or any party to any agreement executed in connection with such sale, with respect to all reasonable requests and due diligence procedures and to use commercially reasonable efforts to facilitate such sale, as the case may be;

(ii)       to promptly deliver to the Takeout Investor any and all additional documents requested by such Takeout Investor to enable such Takeout Investor to make payment of the Takeout Proceeds; and

(iii)      to cause all Takeout Proceeds paid by the Takeout Investor to be paid to the Purchaser or its designee in accordance with the Purchaser's wire instructions.

NY1 1021682v9

ARTICLE III

REPRESENTATIONS, WARRANTIES AND COVENANTS OF
THE SELLER AND THE SERVICER; REPURCHASE; REVIEW OF MORTGAGE LOANS

Section 3.01        Representations and Warranties Regarding the Seller and
the Servicer.

The party named as the Seller in the introduction to this Agreement, in its capacity as Seller and Servicer, hereby makes all the representations, warranties and covenants set forth in Part II of Schedule 1 hereto with respect to the Seller and the Servicer as of each Closing Date or as of such date specifically provided therein.

Section 3.02        Representations and Warranties Regarding Individual
Mortgage Loans.

The party named as the Seller in the introduction to this Agreement, in its capacity as Seller and Servicer, hereby makes all the representations, warranties and covenants set forth in Part III of Schedule 1 hereto with respect to each Mortgage Loan as of the applicable Closing Date or such other date as provided therein.

Section 3.03        Repurchase.

It is understood and agreed that the representations and warranties set forth in Schedule 1 hereto shall survive the sale of the Mortgage Loans, delivery of the Mortgage File to the Purchaser, or its designee, and transfer of the servicing rights associated with such Mortgage Loans, and shall inure to the benefit of the Purchaser, its successors and assigns and assignees thereof, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment or the examination, or lack of examination, of any Mortgage Loan Document.

The Purchaser is expressly relying on the representations contained in Schedule 1 hereto as to each transaction.

Upon discovery by the Seller, the Servicer or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the others. With respect to the representations and warranties which are made to the best of the Seller's knowledge, if it is discovered by the Seller, the Servicer or the Purchaser that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan or the interests of the Purchaser therein, notwithstanding such Seller's lack of knowledge with respect to the substance of such representation or warranty, such inaccuracy shall be deemed a breach of the applicable representation or warranty. The Seller shall have a period of one Business Day from the earlier of its discovery or its receipt of notice of any such breach within which to correct or cure such breach. The Seller hereby covenants and agrees that if any such breach is not corrected or cured within such one Business Day period, the Seller shall, at the Program Administrator's (on behalf of the Purchaser) option repurchase such

22

NY1 1021682v9

Mortgage Loan at the Repurchase Price. In the event that any such breach shall involve any representation or warranty set forth in Part II of Schedule 1 hereto, and such breach is not cured within one Business Day of the earlier of either discovery by or notice to the Seller of such breach, all Mortgage Loans shall, at the option of the Program Administrator on behalf of the Purchaser, be repurchased by the Seller at the Repurchase Price. Any such repurchase shall be accomplished by deposit in the Seller Settlement Account of the amount of the Repurchase Price.

In the event that a Mortgage Loan is repurchased pursuant to this Section 3.03 and the Repurchase Price is paid by withdrawing funds from the Top-Up Account pursuant to Section 4.02, ownership shall be deemed transferred by the Purchaser or its designee to the Seller upon such withdrawal. The Purchaser or its designee shall have the right to execute all documents required in connection with such repurchase pursuant to the limited power of attorney provided under Section 9.13. The Seller shall cooperate with all instructions and demands of the Purchaser or its designee in connection with such repurchase

Section 3.04          Repurchase of Mortgage Loans With Early Payment Defaults.

If (a) a Mortgagor is 30 days or more delinquent with respect to any of the first three scheduled monthly payments due on the related Mortgage Loan immediately following the applicable Closing Date or (b) a Mortgagor or a Mortgage Loan is in bankruptcy or litigation within the first three months immediately following the applicable Closing Date, the Mortgage Loan shall be deemed to be not of sufficient investment quality so as to qualify for the applicable underwriting standards to which it was written and the Seller, at the Program Administrator's (on behalf of the Purchaser) option, shall promptly repurchase such Mortgage Loan from the Purchaser at the Repurchase Price within one Business Day of receipt of written notice from the Purchaser, in accordance with the procedures set forth in Section 3.03 hereof.

Section 3.05          Covenants of Seller.

So long as the Agreement remains in effect or the Seller shall have any obligations hereunder, the Seller hereby covenants and agrees with the Purchaser as follows:

(a) Financial Statements. Promptly upon preparation, but in no event later than (i) 45 days following the end of each of the Seller's fiscal quarters, the Seller shall deliver to the Program Administrator and the Purchaser the Seller's first three unaudited financial statements in form and in sufficient detail to satisfy the Purchaser as of the end of such fiscal quarter and (ii) 60 days following the end of each of the Seller's fiscal years, the Seller shall deliver to the Program Administrator and the Purchaser the Seller's audited financial statements as of the end of such year prepared in accordance with GAAP.

(b) Reports. The Seller shall deliver or cause to be delivered to the Program Administrator and the Purchaser monthly a report, setting forth payment activity, defaults and delinquencies with respect to the each Mortgage Loan acquired by the Purchaser and shall prepare and deliver reports each month in substance and in a form approved by the Purchaser, detailing, with respect to all Purchases, such information as the Purchaser may from time to time reasonably request which reports shall be rendered within 15 days of the month to which they

NY1 1021682v9

pertain. The Seller shall deliver such other reports to the Program Administrator as the Program Administrator may reasonably request.

(c) <u>Compliance With Laws</u>. The Seller will comply in all material respects with all Requirements of Law to which it is or may become subject.

(d) <u>Conduct of Business</u>. The Seller will, and will cause each of its subsidiaries to, carry on and conduct its business in substantially the same manner, as it is presently conducted relating to the business purposes for which this Agreement is being entered into and to do all things necessary to remain duly incorporated, validly existing and in good standing under the laws of the State where the Seller was formed and maintain all requisite authority to conduct its business in each jurisdiction in which its business is conducted.

(e) <u>Ownership</u>. The entity listed on the Pricing Side Letter shall at all times own at least 50% of the capital stock of the Seller.

(f) <u>Notifications</u>. The Seller will notify the Purchaser in writing of any of the following promptly upon learning of the occurrence thereof, describing the same and, if applicable, any remedial steps being taken with respect thereto:

(i)  The occurrence or likelihood of occurrence of an Event of Default hereunder;

(ii)  The institution of any litigation, suit, proceeding or investigation pending or threatened, or any order or decree outstanding, which is reasonably likely to have a material adverse effect on the sale or value of the Mortgage Loans, the execution, delivery, performance or enforceability of this Agreement, or which is reasonably likely to have a Material Adverse Effect on the Seller;

(iii)  The entry of any judgment or decree against the Seller or if the aggregate amount of all judgments and decrees then outstanding against the Seller exceeds $25,000; or

(iv)  the occurrence of any of the events listed in clause (u) of this Section 3.05.

(g) <u>Uncommitted Availability</u>. Immediately after the purchase of any Mortgage Loans hereunder, the aggregate principal balance of Uncovered Mortgage Loans held by the Purchaser hereunder shall not exceed the Uncommitted Availability.

(h) <u>Tangible Net Worth</u>. . The Seller shall not permit its Tangible Net Worth to fall below the "Minimum Required Tangible Net Worth" set forth in the Pricing Side Letter.

(i) <u>L everage Ratio</u>. The Seller shall maintain a Leverage Ratio of not more than that set forth in the Pricing Side Letter.

24

(j) Put Back Loan Ratio. The Seller shall maintain a rolling six month average Put Back Loan Ratio which is less than the amount set forth in the Pricing Side Letter during the Takeout Investor Relationship.

(k) Fidelity Bonds. The Seller shall maintain fidelity bonds and policies of insurance in form and substance satisfactory to the Purchaser insuring itself and the Purchaser and the principals, successors, and heirs and assigns of the Purchaser, in the greater of (a) the Required Insurance Amount, or (b) that amount required by Fannie Mae in Section 1.01 of the Fannie Mae Sellers' Guide, or (c) that amount required by any other agency guidelines, against loss or damage from any breach of fidelity by the Seller or any officer, director, employee or agent of the Seller, and against any loss or damage from loss or destruction of documents, fraud, theft, misappropriation, or errors or omissions. Such insurance may not be part of a blanket policy against which other parties may claim so as to reduce the Purchaser's coverage below the Required Insurance Amount.

(l) Takeout Investor Relationship. The Seller must have previously executed a correspondent purchase agreement that is standard for the secondary mortgage market generally and have at least a six month relationship with one or more Approved Takeout Investors (the "Takeout Investor Relationship"). The Seller must have sold a minimum of $2,000,000 of Mortgage Loans to any such Approved Takeout Investor during the Takeout Investor Relationship.

(m) Change of Name/Address. The Seller will notify the Purchaser not less than 60 days prior to (i) any change of its name or use of any trade names, or (ii) any change in the address of the chief executive office and/or chief place of business of the Seller, or (iii) any change in the location of any part of the Mortgage Loans being held by the Seller pursuant to the terms hereof, or any records pertaining thereto.

(n) Title Insurance. The Seller will use title insurance companies approved by the Program Administrator.

(o) Appraisers. The Seller will use appraisers that are (i) licensed or certified as a residential appraiser by the state, (ii) in good standing with the Appraiser Qualifications Board of the Appraisal Foundation, approved by the Federal Financial Institutions Examinations Council and the applicable state appraisal-licensing agency, and (iii) independent of the Seller, the Program Administrator or any Approved Takeout Provider.

(p) Defense of Title. The Seller warrants and will defend the right, title and interest of the Purchaser in and to all Collateral against all adverse claims and demands.

(q) No Amendment or Compromise. Without the Purchaser's prior written consent, neither the Seller, the Servicer nor those acting on the Seller's behalf shall amend or modify, or waive any term or condition of, or settle or compromise any claim in respect of, any item of the Mortgage Loans or any related rights, provided that any such party may amend or modify a Mortgage Loan if such amendment or modification does not affect the amount or timing of any payment of principal or interest, extend its scheduled maturity date, modify its interest rate, or constitute a cancellation or discharge of its outstanding principal balance and

25

does not materially and adversely affect the security afforded by the real property, furnishings, fixtures, or equipment securing the Mortgage Loan.

(r) No Assignment. Except as permitted herein, neither the Seller nor the Servicer or any other servicer shall sell, assign, transfer or otherwise dispose of, or grant any option with respect to, or pledge, hypothecate or grant a security interest in or lien on or otherwise encumber (except pursuant to this Agreement), any of the Mortgage Loans or any interest therein, provided that this Section shall not prevent any transfer of Mortgage Loans in accordance with this Agreement; any servicing arrangement between the Servicer and the Seller or its Affiliates; and any Forward Commitment or other type of take out commitment for the Mortgage Loans.

(s) Underwriting Standards. If a Forward Commitment does not exist, the Seller shall not permit any material modifications to be made to the Underwriting Standards that will impact either the Purchaser or the Mortgage Loans without the prior consent of the Purchaser (such consent not to be unreasonably withheld). The Seller agrees to deliver to the Purchaser copies of such Underwriting Standards in the event that any changes are made to such Underwriting Standards following the date of this Agreement.

(t) Processing Agent. If so required by the Purchaser, the Seller shall retain and use the services of Persons experienced in the processing of transactions in the secondary mortgage market to facilitate the transactions contemplated hereunder. Each such Person shall be acceptable to the Purchaser in its sole discretion.

(u) No Other Indebtedness. The Seller agrees that so long as any obligation of the Seller to be paid or performed hereunder shall remain outstanding, the Seller shall not, either directly or indirectly, create, incur, assume or suffer to exist, any lien upon the Collateral except as contemplated by this Agreement without the prior written consent of the Purchaser. In addition, the Seller shall provide prompt written notice to the Program Administrator in the event that the Seller:

(i) creates, incurs, assumes or suffers to exist, any Indebtedness except (A) Indebtedness existing on the date hereof and reflected in the financial statements provided by the Seller pursuant to this Agreement or (B) Indebtedness incurred in the ordinary course of business up to $100,000 total outstanding at any one time paid within 30 days after the same has become due and payable;

(ii) purchases or acquires or incurs liability for the purchase or acquisition of any or all of the assets or business of any Person, other than in the normal course of business as presently conducted (it being expressly agreed and understood that the acquisition of loans in process, closed loans and servicing is a normal course of business activity);

(iii) makes or commits to make any advance, loan or extension of credit (other than Mortgage Loans made in the ordinary course of the Seller's business) or capital contribution to, or purchase any stock, bonds, notes, debentures or other securities of, or make any other investment in, any Person, except investments in certificates of deposit issued by a bank or in short-term obligations of the United States;

26

(iv)    sells, leases, assigns, transfers or otherwise disposes of any of its assets (other than obsolete or worn out property), whether now owned or hereafter acquired, other than in the ordinary course of business as presently conducted and at fair market value (it being expressly agreed and understood that the sale or other disposition of Mortgage Loans with or without servicing released is in the ordinary course of business);

(v)    enters into any contracts, leases or other agreements except pursuant to the ordinary course of its business as now conducted by the Seller; or

(vi)    causes or permits any amendment of its organizational documents in effect as of the date hereof.

(v) No Unsatisfied Put Backs. The Seller must have repurchased or cured any prior Put Back Loans.

(w) Maximum Purchase Amount to Tangible Net Worth Ratio. The ratio of the Maximum Purchase Amount to the Seller's Tangible Net Worth shall not exceed 15:1.

Section 3.06        Payment.

Any payment due under this Agreement shall be made promptly and by wire transfer of immediately available funds.

Any late payments shall bear interest at the Prime Rate, plus three percentage points, but in no event greater than the maximum amount permitted by applicable law.

Section 3.07        Legal Costs.

In connection with the Purchaser's and/or the Program Administrator's exercise of any rights and/or remedies under this Agreement, the Seller agrees to pay to the Purchaser and/or the Program Administrator all attorneys' fees and expenses incurred by the Purchaser and/or the Program Administrator (in addition to any and all other expenses incurred by the Purchaser and/or the Program Administrator).

NY1 1021682v9

ARTICLE IV

ACCOUNTS

Section 4.01                    Security Deposit.

Simultaneously herewith, and/or from time to time hereafter, the Seller will be required to deposit with the Purchaser's designee for deposit into the Top-Up Account the amount set forth in the Pricing Side Letter (the "Security Deposit Amount").  At any time that the amount of funds on deposit in the Top-Up Account is less than the Security Deposit Amount, the Seller shall deposit with the Purchaser's designee an amount sufficient to increase such funds to the required amount (which amounts shall be held in the Top-Up Account).

Section 4.02                    Top-Up Account.          ·

(a) The Purchaser's designee shall maintain the Security Deposit Amount as well as any amounts released from the Seller Settlement Account pursuant to Section 4.04(b) in the Top-Up Account and shall hold the same on behalf of the Purchaser (or the Purchaser's designee) pursuant to Section 4.06 hereof.

(b) Provided that no Event of Default or Seller Trigger Event, or event which, with notice or the passage of time, would constitute an Event of Default or Seller Trigger Event, has occurred and is continuing, the Seller may request the Program Administrator to direct the Purchaser's designee to release any funds on deposit in the Top-Up Account in excess of the Security Deposit Amount.  The Purchaser or the Program Administrator on its behalf may at its discretion direct the Purchaser's designee to wire such funds to the Seller, net of any Projected Loss.

(c) In connection with a Purchase Request which has been accepted by the Program Administrator, the Purchaser or the Program Administrator on its behalf shall direct the Purchaser's designee to release, from amounts on deposit in the Top-Up Account to the Seller Funding Account, the amount set forth in the related Purchase Request which represents the portion of the related Mortgage Loan which is not being funded by the Purchase Price; provided, however, that any time the amount of funds on deposit in the Top-Up Account, after application of this Section 4.02(c) are less than the Security Deposit Amount required in Section 4.01, they will be replenished in accordance with Section 4.02(f).

(d) The Security Deposit Amount will not be paid to the Seller, unless and until this Agreement shall have been terminated and the Settlement Date shall have occurred with respect to all Mortgage Loans.

(e) If the Seller fails to (i) repurchase a Defective Mortgage Loan in the time or for the amount required hereunder, or (ii) pay the Shortfall Premium, any Administrative Costs, any Projected Loss or any other amount required to be paid by the Seller to the Purchaser hereunder then, in either such event, the Purchaser or the Program Administrator on its behalf may, in its sole discretion, direct the Purchaser's designee to apply the funds in the Top-Up Account to any such purposes.

28

(f) The Seller agrees to replenish any part of the Security Deposit Amount taken from the Top-Up Account as required by Section 4.01 by the close of business on the day of application of such funds.

Section 4.03          Seller Funding Account.

(a) The Purchaser's designee shall deposit the amounts released from the Top-Up Account pursuant to Section 4.02(c) as well as the Purchase Prices paid hereunder in the Seller Funding Account and shall hold the same on behalf of the Purchaser (or the Purchaser's designee) to be applied in connection with the Purchase of the Mortgage Loans in accordance with the procedures set forth in Section 2.01 pursuant to Section 4.06 hereof.

(b) Provided that no Event of Default or Seller Trigger Event, or event which, with notice or the passage of time, would constitute an Event of Default or Seller Trigger Event, has occurred and is continuing, the Purchaser will release funds on deposit in the Seller Funding Account and promptly wire such funds in accordance with the procedures set forth in Section 2.01 in connection with the completion of a Purchase Request and the origination of the Mortgage Loans.

Section 4.04          Seller Settlement Account.

(a) The Purchaser's designee shall maintain all Takeout Proceeds received on any Settlement Date in the Seller Settlement Account and shall hold the same on behalf of the Purchaser (or the Purchaser's designee) pursuant to Section 4.06 hereof.

(b) Provided that no Event of Default or Seller Trigger Event, or event which, with notice or the passage of time, would constitute an Event of Default or Seller Trigger Event, has occurred and is continuing, the Purchaser's designee will, on each Settlement Date, withdraw from the Seller Settlement Account, and deposit in the Top-Up Account, an amount equal to the excess of (i) the aggregate Adjusted Takeout Proceeds over (ii) the sum of (x) the aggregate Imputed Interest Amount and (y) the aggregate Adjusted Purchase Price, in each case with respect to those Mortgage Loans the sale of which has settled on such Settlement Date.

Section 4.05          Security Interest.

(a) As collateral security for the performance of any and all of its obligations, and to the extent that the Purchaser is not deemed to itself own such property, the Seller hereby assigns, pledges, transfers and sets over unto the Purchaser, and grants to the Purchaser a first lien on and security interest in, all of the Seller's right, title and interest, power, privileges, and other benefits in, to and under any funds in each Account. The rights, powers and privileges granted hereby shall include, without limitation, the right to make all waivers and agreements, to give all notices, consents and releases, and to do any and all other things whatsoever which the Seller is or may become entitled to do with respect to any funds in each Account.

(b) This Agreement shall constitute a security agreement. The Custodian and the holder of any Account required to be created hereunder shall be deemed to be an independent custodian for purposes of perfection of the security interest granted to the Purchaser, and the Purchaser shall have all of the rights of a secured party under applicable law. The Purchaser may

NY1 1021682v9

file one or more UCC financing statements with respect to each Account and deliver a copy of this Agreement to the holder of any Account hereunder as notice of the Purchaser's ownership or first priority security interest in any of the Seller's funds on deposit in each Account.

(c) To the extent any authorization of the Seller is appropriate, the Seller hereby irrevocably agrees to pay to, or at the direction of, the Program Administrator any and all of its funds contained in each Account.

(d) To the extent that the Purchaser becomes liable for the payment of taxes, including withholding taxes, in respect of any of the Seller's funds on deposit in any Account or any payment made hereunder, the Purchaser may deduct such taxes from any of the Seller's funds on deposit in the Top-Up Account and pay the same. The Seller shall indemnify the Purchaser and the Program Administrator against, and hold the Purchaser and the Program Administrator harmless from, any liability for taxes related to any of the Seller's funds on deposit in any Account.

(e) All the taxable events relating to any of the Seller's funds on deposit in any Account will be reported to the Seller on IRS Form 1099 in accordance with the Purchaser's standard practice.

Section 4.06          Certain Terms of the Accounts.

(a) Funds deposited in any Account may not be commingled with other funds being held by the Purchaser's designee and no interest shall be paid to the Seller on any funds on deposit in any Account.

(b) The Purchaser's designee may invest the funds on deposit in any Account on such terms as the Program Administrator shall determine appropriate without any obligation to account to the Seller for the proceeds (or loss) of such investment. Any proceeds of such investment will be the property of the Purchaser or its designee.

(c) The Purchaser's designee and the Program Administrator shall have no duties, liabilities or obligations (including those of trustee or fiduciary) with regard to any Account. The Purchaser's designee has all right, title and interest in all funds on deposit in each Account and shall exercise the same care with respect to funds in each Account as it exercises with respect to its other funds. The Purchaser's designee and the Program Administrator shall not, nor shall any of their officers, directors or agents, be liable for any error of judgment, or any action taken or omitted to be taken, in good faith and believed by it or them to be within the purview of this Agreement, except for gross negligence or willful misconduct. In no event shall the Purchaser's designee or the Program Administrator, their officers, directors or agents be held liable for any special, punitive, indirect or consequential damages resulting from any action taken, or omitted to be taken, by it or them with respect to the funds in any Account even if advised of the possibility of such damages.

(d) The Purchaser's designee or the Program Administrator shall, upon the request of the Seller, furnish to the Seller a statement of the funds on deposit in each Account. The Seller shall promptly review such statement and advise the Program Administrator of any error, omission or inaccuracy of which it becomes aware. Such notification by the Seller is not conclusive of any such error, omission or inaccuracy.

NY1 1021682v9

ARTICLE V

COLLECTIONS AND DISTRIBUTIONS

Section 5.01        Distributions.

. . (a) If so requested by the Program Administrator, the Servicer shall establish and maintain, at a bank approved by the Program Administrator, a segregated trust account for the benefit of the Purchaser (the "Custodial Account"), and shall promptly deposit into such Custodial Account, any interest and/or principal payments received with respect to each Mortgage Loan (but not any interest accrued on such Mortgage Loan up to but not including the Closing Date for such Mortgage Loan), and all other receipts in respect of each Mortgage Loan that are payable for the benefit of the owner of each such Mortgage Loan. Under no circumstances shall the Servicer deposit any funds belonging to it into the Custodial Account, or otherwise commingle its own funds with the funds belonging to the Purchaser as owner of any Mortgage Loans.

(b) The terms of the Custodial Account shall specifically provide that the funds therein contained shall be released only at the direction of the Program Administrator following the occurrence of any Event of Default hereunder.

(c) The Servicer shall not change the identity or location of such Custodial Account without 30 days prior written notice to the Purchaser and the Program Administrator. The Servicer shall from time to time, at its own cost and expense, execute such UCC financing statements pursuant, directions to the bank holding such Custodial Account and other papers, documents or instruments, as may be reasonably requested by the Program Administrator or the Purchaser to reflect the Purchaser's ownership interest in such Custodial Account. The Seller hereby authorizes the Purchaser to execute and file at any time and from time to time precautionary financing statements or copies thereof with respect to such Custodial Account signed only by the Purchaser.

(d) The Servicer shall promptly deliver to the Purchaser or the Program Administrator copies of all bank statements and other records relating to such Custodial Account as the Program Administrator or the Purchaser may from time to time request.

(e) On each Business Day, the Servicer shall remit by wire transfer to the Seller Settlement Account all unscheduled payments of principal on the Mortgage Loans received by the Seller, as Servicer, as of the close of business on the preceding day. Notwithstanding Section 2.01(g) and subject to the provisions of the next sentence, the Servicer initially shall retain all scheduled payments of principal and interest collected on the Mortgage Loans, which collections will be deemed to have been received by the Purchaser and then paid to the Seller by the Purchaser. Notwithstanding the foregoing, on each Remittance Date, the Servicer, if directed by the Program Administrator, shall remit by wire transfer to the Purchaser for deposit in the Seller Settlement Account all scheduled and/or unscheduled payments of principal and interest on the Mortgage Loans received by the Seller, as Servicer, through the close of business on the preceding Determination Date, then held by the Seller, whether or not on deposit in such Custodial Account.

31

(f) With respect to any remittance received by the Purchaser or its designee after the Business Day on which such payment was due, the Servicer shall pay to the Purchaser interest on any such late payment at an annual rate equal to the Prime Rate, adjusted as of the date of each change, plus three percentage points, but in no event greater than the maximum amount permitted by applicable law. Such interest shall be remitted along with the distribution payable on the next succeeding Remittance Date. The payment by the Servicer of any such interest shall not be deemed an extension of time for payment or a waiver of any Event of Default by the Servicer.

Section 5.02          Statements to the Purchaser.

The Servicer shall furnish to the Purchaser and the Program Administrator such reports, including loan-level reports, regarding Mortgage Loan payment activity, and/or delinquency status, as the Purchaser or the Program Administrator may reasonably request.

The Servicer shall prepare and file any and all information statements or other filings required to be delivered to any governmental taxing authority or to the Purchaser pursuant to any applicable law with respect to the Mortgage Loans and the transactions contemplated hereby. In addition, the Servicer shall provide the Purchaser or its designee with such information concerning the Mortgage Loans as is necessary for the Purchaser to prepare its federal income tax return as the Purchaser may reasonably request from time to time.

In addition, not more than 60 days after the end of each calendar year, the Servicer shall furnish to the Purchaser or its designee at any time during such calendar year an annual statement in accordance with the requirements of applicable federal income tax law as to the aggregate of remittances for the applicable portion of such year.

NY1 1021682v9

ARTICLE VI

THE SELLER AND THE SERVICER

Section 6.01          Indemnification; Third Party Claims.

The Servicer agrees to indemnify on demand the Purchaser, the Program Administrator and their affiliates, trustees, agents, successors and assignees, and hold them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser or such Person may sustain in any way related to the failure of the Servicer to observe and perform its duties, obligations, covenants, and agreements to service the Mortgage Loans during the Interim Servicing Period in strict compliance with the terms of this Agreement. The Seller agrees to indemnify on demand the Purchaser, the Program Administrator and their affiliates, trustees, agents, successors and assignees, and hold them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that they may sustain in any way related to (i) the failure of the Seller to observe and perform its duties, obligations, and covenants in strict compliance with the terms of this Agreement, (ii) the breach of a representation or warranty set forth in Schedule 1 hereto, (iii) any act or omission on the part of the Seller or any other person or entity in the origination, receiving, processing, funding or servicing of any Mortgage Loan prior to the related Servicing Transfer Date or otherwise arising from the transfer of servicing of the Mortgage Loans provided for in this Agreement or (iv) the Seller's inability to effect or cause the transfer of the servicing of the Mortgage Loans to a successor servicer pursuant to Section 6.03 of this Agreement. An indemnifying party hereunder shall immediately notify the Purchaser if a claim is made by a third party with respect to this Agreement or a Mortgage Loan, assume (with the consent of the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim, but failure to so notify the Purchaser shall not limit its obligations hereunder. An indemnifying party hereunder shall follow any written instructions received from the Purchaser in connection with such claim. The Purchaser shall promptly reimburse an indemnifying party hereunder for all amounts advanced by it pursuant to the two preceding sentences except when the claim relates to the failure of the Servicer to service and administer the Mortgage Loans in strict compliance with the terms of this Agreement, the failure of the Seller to perform its duties and obligations pursuant to this Agreement, the breach of any representation or warranty set forth in Schedule 1 hereto, or the gross negligence, bad faith or willful misconduct of either the Seller or the Servicer. The Seller, or the Servicer as the case may be, agrees that it will not enter into any settlement of any such claim without the consent of the Purchaser unless such settlement includes an unconditional release of the Purchaser from all liability that is the subject matter of such claim. The provisions of this Section 6.01 shall survive termination of this Agreement, the transfer of the servicing rights and the transfer of the Mortgage Loans.

Section 6.02          Merger or Consolidation of the Seller or the Servicer.

Each of the Seller and the Servicer shall keep in full effect its existence, rights and franchises as a corporation under the laws of the state of its incorporation except as permitted

33

herein, and shall obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement, or any of the Mortgage Loans and to perform its duties under this Agreement.

Any Person into which either the Seller or the Servicer may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which either the Seller or the Servicer shall be a party, or any Person succeeding to the business of either the Seller or the Servicer whether or not related to loan servicing, shall be the successor of the Seller or of the Servicer, as applicable, hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided that any such successor shall, in the judgment of the Program Administrator, have at least the same level of financial strength and ability to originate and/or service the Mortgage Loans as did the Seller or the Servicer, as applicable, pre-merger or consolidation.

Section 6.03        Transfer

(a)  It is expressly acknowledged that the servicing rights relating to the Mortgage Loans purchased by the Purchaser hereunder have been sold, assigned, and transferred by the Seller to the Purchaser along with the Mortgage Loans. The Servicer's rights to interim service the Mortgage Loans as provided in this Agreement, shall terminate on the earlier of (1) the related Servicing Transfer Date or (2) the occurrence of an Event of Default hereunder. Upon the occurrence of the earlier of (1) or (2) above at any time, the Servicer's rights and obligations to service the Mortgage Loan(s), as provided in this Agreement, shall terminate immediately; no notice or action by the Purchaser shall be required for the occurrence of such termination. The Servicer agrees and acknowledges that the Purchaser may also, at any time, terminate the interim servicing of the Mortgage Loans by the Servicer and transfer servicing to another Person on such date as the Purchaser may determine in its sole discretion.

(b) The Servicer shall grant the Purchaser and the Program Administrator, as the case may be, access to its servicing facilities for the purpose of demonstrating to the Purchaser's reasonable satisfaction that the Servicer has the ability to service the Mortgage Loans as provided in this Agreement.

(c) Upon any termination of the Servicer, the Servicer's rights and obligations to service the Mortgage Loans shall terminate immediately, without any further notice or action by the Purchaser or the Program Administrator and the Servicer shall transfer servicing to the Purchaser's designee, at no cost or expense to the Purchaser, it being agreed that the Seller will pay any and all fees required to terminate the Servicer and to effectuate the transfer of servicing to the designee of the Purchaser.

NY1 1021682v9

ARTICLE VII

SELLER TRIGGER EVENTS , EVENTS OF DEFAULT, TERMINATION

Section 7.01          Seller Trigger Events

If a Seller Trigger Event occurs and shall not have been remedied, the Program Administrator on behalf of the Purchaser, by notice in writing to the Servicer may, in addition to whatever rights the Purchaser or the Program Administrator may have elsewhere under this Agreement and at law or equity or to damages, including injunctive relief and specific performance, (i) cease purchasing Mortgage Loans from the Seller, (ii) direct the Purchaser's designee to use any funds on deposit in the Top-Up Account to pay to the Purchaser in order to cover any Projected Loss, (iii) procure (through the Program Administrator) a Forward Commitment on any Uncovered Mortgage Loans and (iv) require any amounts otherwise distributable to the Seller to remain in the Top-Up Account until the Seller Trigger Event is cured.

Section 7.02          Events of Default.

All rights of the Seller and the Servicer under this Agreement shall terminate if one of the following Events of Default occurs and is continuing (for the purposes of this Section 7.02 only, the party named as the Seller and Servicer herein shall be referred to as, the "Seller"):

(i)      any failure by the Seller to remit to the Purchaser any payment required to be made by it under the terms of this Agreement which continues unremedied for a period of one Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Seller by the Purchaser; or

(ii)      failure on the part of the Seller duly to observe or perform in any material respect any of the other covenants or agreements on the part of the Seller set forth in this Agreement; or

(iii)      a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Seller and such decree or order shall have remained in force undischarged or unstayed for a period of 30 days; or

(iv)      the Seller shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Seller or of or relating to all or substantially all of its property; or

35

NY1 1021682v9

(v)    the Seller shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations; or

(vi)    the Seller ceases to be approved by at least one of HUD, Fannie Mae or Freddie Mac as a mortgage loan seller and servicer for more than 30 days; or

(vii)    the Seller attempts to assign its right to servicing compensation hereunder or the Seller attempts, without the consent of the Purchaser, to sell or otherwise dispose of all or substantially all of its property or assets or to assign this Agreement or the servicing responsibilities hereunder or to delegate its duties hereunder or any portion thereof; or

(viii)    the Seller (a) ceases to be licensed to service residential mortgage loans in each jurisdiction in which a Mortgaged Property is located and such licensing is required, (b) ceases to be qualified to transact business in any jurisdiction where it is currently so qualified, but only to the extent such non-qualification materially and adversely affects the Seller's ability to perform its obligations hereunder or (c) has an investigation commenced against it or any Principal or Affiliate of the Seller relating to improper lending practices or securities law matters; or

(ix)    the failure of the Seller to deliver to the Purchaser or its designee the relevant Mortgage Loans on the relevant Closing Date; or

(x)    any of the representations and warranties made by the Seller herein, or in any certificate or other document delivered pursuant to or in connection with this Agreement or any transaction contemplated hereby, shall prove to be untrue in any material respect when made or deemed made and such failure is not cured by the Seller within three Business Days of written notice by the Program Administrator; or

(xi)    default by the Seller, whether as principal, guarantor or surety, in the payment of any principal or interest on any indebtedness of the Seller; or

(xii)    the occurrence and continuance of an "event of default" or of an "event of termination" on the part of the Seller under any other agreement between the Seller and the Purchaser or the Program Administrator or any of their affiliates, which has not been waived by the Purchaser or the Program Administrator, as the case may be; or

(xiii)    any Material Adverse Effect occurs; or

NY1 1021682v9