# EXHIBIT 1

## Part 2

(xiv)    failure of the Seller to maintain a Takeout Commitment Ratio during any three month period which is more than the amount set forth in the Pricing Side Letter; or

(xv)    failure of the Seller to cure a Seller Trigger Event within three Business Days of written notice received by the Program Administrator; or

(xvi)    the Seller fails to repurchase any Mortgage Loan pursuant to Section 3.03, which failure is not waived by the Purchaser.

Upon the occurrence and continuation of any Event of Default or any event which, with notice or the passage of time, would constitute an Event of Default, the Program Administrator on behalf of the Purchaser may direct that no further Purchases shall occur hereunder, and any amounts otherwise distributable to the Seller shall remain in the Top-Up Account, the Seller Funding Account and the Seller Settlement Account until such event is cured or waived. In addition, in each and every such case, so long as an Event of Default shall not have been remedied, the Program Administrator on behalf of the Purchaser, by notice in writing to the Seller may, in addition to whatever rights the Purchaser may have under this Agreement or at law or equity or to damages, including injunctive relief and specific performance, terminate all the rights and obligations of the Seller and the Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof without compensating the Seller or the Servicer for the same. On or after the receipt by the Seller of such written notice of termination, all authority and power of the Servicer under this Agreement, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in the successor appointed pursuant to Section 6.03(c). Upon written request from the Program Administrator or the Purchaser, the Seller shall prepare, execute and deliver, any and all documents and other instruments, place in such successor's possession all servicing files, and do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents, or otherwise, at the Seller's sole expense. The Seller agrees to cooperate with the Purchaser and such successor in effecting the termination of the Seller's responsibilities and rights hereunder, including, without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Seller to the Custodial Account or Escrow Account or thereafter received with respect to the Mortgage Loans or any REO Property.

Section 7.03        Waiver of Defaults.

The Purchaser, or the Program Administrator on behalf of the Purchaser, may waive only by written notice any default by the Seller or the Servicer in the performance of its obligations hereunder and its consequences. Upon any such waiver of a past default, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement. No such waiver shall extend to any subsequent or other default or impair any right consequent thereon except to the extent expressly so waived in writing.

NY1 1021682v9

Section 7.04          <u>Seller/Servicer Termination Without Cause; Expiration.</u>

(a) The Program Administrator on behalf of the Purchaser may, at its sole option, terminate any rights the Seller and/or the Servicer may have hereunder, without cause, upon 30 days written notice.

(b) In the event this Agreement expires on the Termination Date and at that time there exists no Event of Default, then, immediately prior to such Termination Date, as to all Mortgage Loans then owned by the Purchaser, a Required Sale Event shall be deemed to occur unless this Agreement is extended. Any amounts distributable to the Seller shall remain in the Top-Up Account during the period between the Termination Date and the consummation of such a Required Sale Event.

NY1 1021682v9

ARTICLE VIII

TAKEOUT SALES; MARGIN CALLS

Section 8.01          Sale of Mortgage Loans to Takeout Investors.

(a) The sale of each Mortgage Loan to the Purchaser shall include, and the Seller hereby assigns to the Purchaser, free of any security interest, lien, claim or encumbrance of any kind, the Seller's rights to deliver the Mortgage Loan to the Takeout Investor under the related Forward Commitment, if any, and to receive the Takeout Proceeds therefor from such Takeout Investor.  Such sale shall be made pursuant to the provisions of such Forward Commitment. With respect to each Uncovered Mortgage Loan, and any Mortgage Loan as to which the Takeout Investor fails to honor its Forward Commitment, the Program Administrator in its sole discretion and without the consent of the Seller, shall direct the Purchaser at any time to sell, any such Mortgage Loans to an investor designated by and pursuant to the terms specified by the Program Administrator.

(b) The Purchaser in its sole discretion may permit the Seller to substitute a different Forward Commitment with respect to a Mortgage Loan.

(c) The Seller shall cause each Takeout Investor to provide to the Program Administrator the related Settlement Information with respect to any Mortgage Loan as to which it has delivered a Forward Commitment.

(d) The Settlement Date shall occur on the Business Day following the day upon which the applicable Takeout Proceeds are received by the Purchaser (or its designee).  Any Settlement Information and/or Takeout Proceeds received by the Program Administrator (or its designee) after 12:00 p.m. (New York City time) on a Business Day (or at any time on a day which is not a Business Day) shall be deemed for all purposes to have been received on the next Business Day.

(e) If a Takeout Investor delivers Takeout Proceeds but fails to provide the correct Settlement Information, the Program Administrator (or its designee) will notify the Seller and/or Takeout Investor.  If the Takeout Investor fails to provide the correct Settlement Information within one Business Day after receipt of such notification, the Program Administrator may, in its sole discretion:

(i)          return any Takeout Proceeds for which it has incomplete Settlement Information to the Takeout Investor; or

(ii)          place such Takeout Proceeds in a non-interest bearing account until the requisite Settlement Information and any additional Takeout Proceeds necessitated by the delay in settlement is provided.

39

Section 8.02          Market Value.

(a) On each Business Day, the Program Administrator shall determine the Market Value of all the Uncovered Mortgage Loans that are held by the Purchaser hereunder. If the Market Value of the Uncovered Mortgage Loans relating to any Purchase at any time has declined from the Adjusted Purchase Price of the Uncovered Mortgage Loans as of the relevant Closing Date (a "Margin Deficit"), then the Program Administrator on behalf of the Purchaser may by notice to the Seller require the Seller to transfer to the Purchaser cash or, at the Program Administrator's (on behalf of the Purchaser) sole discretion, additional Mortgage Loans reasonably acceptable to the Program Administrator on behalf of the Purchaser ("Additional Mortgage Loans") having an aggregate Market Value at least equal to the Margin Deficit (such requirement, a "Margin Call").

(b) Notice delivered pursuant to (a) above may be given by any means. Any notice given before 10:00 a.m. (New York City time) on a Business Day shall be met, and the related Margin Call satisfied, no later than 5:00 p.m. (New York City time) on such Business Day. Notice given on any Business Day after the applicable hour specified in the preceding sentence, shall be met, and the related Margin Call satisfied, no later than 5:00 p.m. (New York City time) on the following Business Day. The failure of the Purchaser, on any one or more occasions, to exercise its rights hereunder, shall not change or alter the terms and conditions to which this Agreement is subject or limit the right of the Purchaser to do so at a later date. The Seller and the Purchaser each agree that a failure or delay by the Purchaser to exercise its rights hereunder shall not limit or waive the Purchaser's rights under this Agreement or otherwise existing by law or in any way create additional rights for the Seller.

(c) Any cash or Additional Mortgage Loans provided by the Seller hereunder shall result in a reduction of the Adjusted Purchase Price of the related Uncovered Mortgage Loans.

Section 8.03          Required Sale Event.

A "Required Sale Event" shall occur if:

(a)     the Seller fails to deliver such cash or Additional Mortgage Loans as provided in Section 8.02(a) above, with respect to each Uncovered Mortgage Loan;

(b)     if the Settlement Date for any Mortgage Loan has not occurred within 45 days of the Closing Date (such time period to be extended by the Program Administrator, in its sole discretion in 15 day intervals up to 90 days), with respect to such Mortgage Loans; and

(c)     upon the occurrence and continuation of an Event of Default pursuant to Section 7.02, with respect to all the Mortgage Loans covered by this Agreement.

Upon the occurrence of a Required Sale Event, the Program Administrator may instruct the Purchaser to forthwith sell, assign, give an option or options to purchase, contract to sell, or otherwise dispose of and deliver the related Mortgage Loans, or any part thereof, at such public or private sale or sales, at such place or places, at such price or prices and upon such other

40

terms and conditions as the Program Administrator may deem best, for cash or on credit or for future delivery without assumption of any credit risk. Upon any sale, transfer or other disposition of the related Mortgage Loans pursuant hereto the Purchaser shall have the right to deliver, assign and transfer to the transferee thereof the related Mortgage Loans so sold. Each transferee upon any such transfer or other disposition shall hold the property thereby acquired by it absolutely free from any claim or right of any kind, including any equity or rights of redemption, of the Seller, who hereby specifically waives all rights of redemption, stay or appraisal which it has, or may have under any Requirement of Law whether now existing or hereafter adopted. The Program Administrator and the Purchaser shall incur no liability as a result of the sale of the related Mortgage Loans, or any part thereof, at any public or private sale. The Seller hereby waives any claims against the Program Administrator and the Purchaser arising by reason of the fact that the price at which the related Mortgage Loans may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was such that the Purchaser sustained Losses, even if the Program Administrator on behalf of the Purchaser, accepts the first offer received and does not offer the related Mortgage Loans to more than one offeree. The Seller acknowledges that the related Mortgage Loans may be sold in such manner to affiliates of the Purchaser.

NY1 1021682v9

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

Section 9.01        Intent of Parties; Security Interest.

The Purchaser and the Seller confirm that the transactions contemplated hereby are intended to be true sales and absolute assignments of the Mortgage Loans by the Seller to the Purchaser rather than borrowings secured by the Mortgage Loans. The Purchaser shall own the Mortgage Loans and have all rights and entitlements appurtenant thereto, including, without limitation, the right (subject only to any contractual obligations the Purchaser may have assumed with respect to any Takeout Investor), to sell any Mortgage Loan to such third party, and on such terms, as it deems appropriate, to pledge its interest, to take over servicing any Mortgage Loan or replace the Seller as the servicing agent with respect to any Mortgage Loan. The Seller shall not take any action inconsistent with the Purchaser's ownership of any Mortgage Loans and shall not claim any legal, beneficial or other interest in any Mortgage Loan. In the event that any Purchase hereunder is construed by any court or regulatory authority as a loan or other than a purchase and sale of the related Mortgage Loans, the Seller shall be deemed to have hereby pledged to the Purchaser as security for the performance by the Seller of all of its obligations from time to time arising hereunder, and shall be deemed to have granted to the Purchaser a first priority security interest in, the Mortgage Loans, the related records, all mortgage guaranties and insurance relating to such Mortgage Loans (issued by governmental agencies or otherwise) or the related Mortgaged Property and any mortgage insurance certificate or other document evidencing such mortgage guaranties or insurance relating to such Mortgage Loans and all claims and payments thereunder, any purchase agreements or other agreements or contracts relating to or constituting any or all of the foregoing, all "accounts" as defined in the Uniform Commercial Code relating to or constituting any or all of the foregoing, and any other contract rights, payment rights, rights to payment (including payment of interest or finance charges), and all instruments, chattel paper, securities, investment property and general intangibles and other assets comprising or relating to the Mortgage Loans, all other insurance policies and insurance proceeds relating to any Mortgage Loans or the related Mortgaged Property, any security account and all rights to income and the rights to enforce such payments arising from any of the Mortgage Loans, all servicing rights to the Mortgage Loans, all guarantees or other support for the Loans, and any and all replacements, substitutions, distributions on, or cash or non-cash proceeds with respect to, any of the foregoing (collectively, the "Collateral"). In furtherance of the foregoing, (i) this Agreement shall constitute a security agreement, (ii) the Purchaser shall have all of the rights of a secured party with respect to the Collateral pursuant to applicable law and (iii) the Seller shall execute all such documents, including but not limited to financing statements under the Uniform Commercial Code as in effect in any applicable jurisdictions, as the Purchaser may reasonably require to effectively perfect and evidence the Purchaser's first priority security interest in the Collateral. All filing fees incurred in connection with perfecting and evidencing the Purchaser's first priority security interest in the Collateral shall be borne by the Seller. If any such fees are advanced by the Purchaser, they shall be reimbursed by the Seller promptly upon presentation of an invoice and appropriate supporting documentation from the Program Administrator. The Seller shall indemnify and hold the Purchaser harmless from any

NYI 1021682v9

Losses that may arise in the event that the security interest referred in this Section 9.01 shall not be a security interest in the Collateral.

Section 9.02          Amendment.

This Agreement may be amended or supplemented from time to time by written agreement executed by the Purchaser, the Seller and the Program Administrator.

Section 9.03          Governing Law.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO ITS CONFLICT OF LAW PROVISIONS, EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW. THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 9.04          Notices.

Any demands, notices or other communications permitted or required hereunder shall be in writing and shall be deemed conclusively to have been given if personally delivered at or mailed by registered mail, postage prepaid, and return receipt requested or certified mail, return receipt requested, or transmitted by telex, telegraph or telecopier and confirmed by a similar mailed writing, to the address set forth below the related signature to this Agreement or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

Section 9.05          Severability of Provisions.

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

43

Section 9.06          <u>Confidentiality of Information.</u>

Each party recognizes that, in connection with this Agreement, it may become privy to non-public information regarding the financial condition, operations and prospects of the other party. Except as required by law, each party agrees to keep all non-public information regarding the other party strictly confidential, and to use all such information solely in order to effectuate the purpose of the Agreement, provided that each party may provide confidential information to its employees, agents and affiliates who have a need to know such information in order to effectuate the transaction, provided further that such information is identified as confidential non-public information. In addition, confidential information may be provided to a regulatory authority with supervisory power over the Purchaser, provided such information is identified as confidential non-public information.

Section 9.07          <u>Authority of Program Administrator to Direct.</u>

The Seller and the Purchaser hereby grant to the Program Administrator the power to direct the custodian holding any Accounts to make transfers to and from such Accounts and to perform all of the Purchaser's duties and to act as the Purchaser's designee for purposes of directing any actions needed to be taken by the Purchaser to enforce the Purchaser's rights under this Agreement.

Section 9.08          <u>Assignment by Purchaser.</u>

The Purchaser shall have the right, without the consent of the Seller or the Servicer hereof, to assign, in whole or in part, its interest under this Agreement with respect to some or all of the Mortgage Loans, and designate any person to exercise any rights of the Purchaser hereunder and the assignee or designee shall accede to the rights and obligations hereunder of the Purchaser with respect to such Mortgage Loans. The Seller agrees that all the representations and warranties set forth in <u>Schedule 1</u> hereto shall be automatically restated as of the date of the assignment or sale to the assignee without the need of any notice to or further action by the Purchaser, the Seller, the Servicer or any other party. All references to the Purchaser in this Agreement shall be deemed to include its assignee or designee.

Notwithstanding any provision in this Agreement to the contrary, the Purchaser may at its sole discretion without notice to or action by the Seller or the Servicer assign, delegate or transfer to any third party the right to enforce any obligation of the Seller or the Servicer under this Agreement.

Section 9.09          <u>No Partnership.</u>

Nothing herein contained shall be deemed or construed to create a co-partnership or joint venture between the parties hereto and the services of the Servicer shall be rendered as an independent contractor and not as agent for the Purchaser.

Section 9.10          <u>Execution; Successors and Assigns.</u>

This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be

44

an original; such counterparts, together, shall constitute one and the same agreement. This Agreement shall inure to the benefit of and be binding upon the Seller, the Servicer and the Purchaser and their respective successors and assigns.

Section 9.11          Entire Agreement.

Each of the parties to this Agreement acknowledges that no representations, agreements or promises were made to any of the other parties to this Agreement or any of its employees other than those representations, agreements or promises specifically contained herein. This Agreement sets forth the entire understanding between the parties hereto and shall be binding upon all successors of all of the parties.

Section 9.12          MERS.

The Purchaser reserves the right to require the Seller to employ the Mortgage Electronic Registry System for the settlement of the acquisition and re-sale of Mortgage Loans hereunder.

Section 9.13          Power of Attorney.

By executing this Agreement, the Seller is hereby granting to the Purchaser a special power of attorney irrevocably making, constituting and appointing the Purchaser as the Seller's attorney-in-fact, with power and authority to act in the Seller's name and on the Seller's behalf to execute, acknowledge and swear to the execution, acknowledgment and filing of all instruments and documents governing the funding, transfer or assignment of any Mortgage Loans purchased by the Purchaser hereunder, which shall include, but is not limited to, assignments of the Mortgage Notes, all documents required to execute repurchases of Mortgage Loans on behalf of the Purchaser in accordance with Article III and other provision hereunder and any other documents, or rights thereunder, transferred to the Purchaser hereunder. This power of attorney being granted by the Seller is a special power of attorney coupled with an interest and is irrevocable. It shall survive the dissolution of the Seller and is limited to those matters herein set forth. The Seller is the payee on the Mortgage Note and the lender or creditor under applicable consumer credit law with respect to each Mortgage Loan. If and to the extent, applicable consumer credit law disregards this characterization, the Seller shall be deemed to be the exclusive agent for and on behalf of the Purchaser.

Section 9.14          Trustee Capacity of Owner Trustee.

Notwithstanding anything contained herein to the contrary, it is expressly understood and agreed by the parties hereto that (a) this Agreement is executed and delivered on behalf of the Purchaser by Delaware Trust Company, National Association, not individually or personally but solely in its trustee capacity, in the exercise of the powers and authority conferred and vested in it as "Owner Trustee" under the Amended and Restated Trust Instrument of the Terwin Mortgage Warehouse Trust II, dated as of March 3, 2005, between the Program Administrator and Delaware Trust Company, National Association, (b) each of the representations, undertakings and agreements herein made on the part of the Purchaser is made and intended not as personal representations, undertakings and agreements by the Owner Trustee but is made and intended for the purpose of binding only the Purchaser and (c) under no

45

circumstances shall the Owner Trustee be personally liable for the payment of any indebtedness or expenses of the Purchaser or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Purchaser under this Agreement or the other related documents.

Section 9.15    Submission to Jurisdiction.

Each of the parties to this Agreement hereby irrevocably and unconditionally:

(a) submits for itself and its property in any legal action or proceeding relating to this Agreement or any amendment thereto, or for recognition and enforcement of any judgment in respect thereof, to the exclusive general jurisdiction of the courts of the State of New York sitting in the Borough of Manhattan, the federal courts of the United States of America for the Southern District of New York, and appellate courts from any thereof;

(b) consents that any such action or proceeding may be brought in such courts and, to the extent permitted by law, waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same; and

(c) agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to its address set forth under the notice requirements in this Agreement.

NY1 1021682v9

IN WITNESS WHEREOF, the Seller, the Purchaser and the Program Administrator have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

TERWIN MORTGAGE WAREHOUSE TRUST II, SERIES LVIII, a series of Terwin Mortgage Warehouse Trust II, a Delaware statutory trust

By: U.S. Bank Trust National Association, Successor to Delaware Trust Company, National Association, not in its individual capacity, but solely as Owner Trustee

By _____

Name: STERLING C. CORREIA

Title: VICE PRESIDENT

Address:    300 Delaware Avenue, Suite 900
            Wilmington Delaware 19801
Attention:  Sterling Correia
Telephone:  (302) 552-3104
Facsimile:  (302) 552-3129

SILVER STATE FINANCIAL SERVICES, INC., AS SELLER

By _____ CFO

Name: ~~Michael Stoddart~~ Tom Edington
Title: ~~President~~ CFO

Address:    ~~2920 N. Green Valley Parkway 424~~ 2485 Village View Dr.
Attention:  ~~Henderson, Nevada 89014~~ Henderson, NV 89074
Telephone:  ~~702-898-3535~~ 702-944-0574
Facsimile:  ~~702-898-9872~~ 702-898-8367

TERWIN WAREHOUSE MANAGEMENT LLC, AS PROGRAM ADMINISTRATOR

By _____

Name: Thomas K. Guba
Title: President

Address:    45 Rockefeller Plaza, Suite 420
            New York, NY 10111
Attention:  Richard Chun

Telephone:  (212) 218-5876

Signature Page-1

NY1 1021682v9

Facsimile:    (212) 218-5875

2

NY1 1021682v9

## SCHEDULE 1

### REPRESENTATIONS, WARRANTIES AND COVENANTS
### OF THE SELLER AND THE SERVICER

### ARTICLE I:
### DEFINED TERMS

As used in this Schedule 1 to the Seller's Purchase, Warranties and Servicing Agreement (the "Agreement") including all amendments hereof and supplements hereto, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined). Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Agreement.

Adjustable Rate Mortgage Loan: Any Mortgage Loan as to which the related Mortgage Note provides for periodic adjustments of the Mortgage Rate applicable thereto.

Adjustment Date: With respect to each Adjustable Rate Mortgage Loan, the date set forth in the related Mortgage Note on which the Mortgage Interest Rate on such Mortgage Loan is adjusted in accordance with the terms of such Mortgage Note.

ALTA: The American Land Title Association or any successor.

Appraised Value: With respect to any Mortgaged Property, the lesser of (i) the value thereof as determined by an appraisal made for the originator of the Mortgage Loan at the time of origination of the Mortgage Loan by an appraiser meeting the standards set forth in the applicable Underwriting Standards, and (ii) the purchase price paid for the related Mortgaged Property by the Mortgagor with the proceeds of the Mortgage Loan, provided, however, in the case of a Refinanced Mortgage Loan, such value of the Mortgaged Property is based solely upon the value determined by an appraisal made for the originator of such Refinanced Mortgage Loan at the time of origination of such Refinanced Mortgage Loan by an appraiser meeting the standards set forth in the applicable Underwriting Standards.

BIF: The Bank Insurance Fund, or any successor thereto.

Code: The Internal Revenue Code of 1986, as the same may be amended from time to time (or any successor statute thereto).

Condemnation Proceeds: All awards or settlements in respect of a Mortgaged Property, whether permanent or temporary, partial or entire, by exercise of the power of eminent domain or condemnation, to the extent not required to be released to a Mortgagor in accordance with the terms of the related Mortgage Loan Documents.

Convertible Mortgage Loan: Any Adjustable Rate Mortgage Loan as to which the related Mortgage Note permits the Mortgagor to convert the Mortgage Interest Rate on such Mortgage Loan to a fixed Mortgage Interest Rate.

NY1 1021682v9

Credit Score: The credit score for each Mortgage Loan shall be calculated using a minimum of two credit bureau scores obtained at origination or such other time by the Seller. If two credit bureau scores are obtained, the Credit Score will be the lower score. If three credit bureau scores are obtained, the Credit Score will be the middle of the three. When there is more than one applicant, the lowest of the applicants' Credit Scores will be used. There is only one score for any loan regardless of the number of borrowers and/or applicants.

Due Date: The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

Due Period: With respect to any Remittance Date, the period commencing on the opening of business on the second day of the month preceding the month of such Remittance Date and ending at the close of business on the first day of the month of the Remittance Date.

Equity: With respect to any second lien Mortgage Loan and as of any date of determination, the Appraised Value, less the unpaid principal balance of the related First Lien as of such date.

Equity Loan-to-Value or Equity LTV: With respect to any second lien Mortgage Loan and as of any date of determination, the original principal balance of such Mortgage Loan, divided by the Equity as of such date.

FIRREA: The Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

First Lien: With respect to any second lien Mortgage Loan, the mortgage loan relating to the corresponding Mortgaged Property having a first priority lien.

Fixed Rate Mortgage Loan: A Mortgage Loan purchased pursuant to this Agreement which bears a fixed Mortgage Interest Rate during the life of the loan.

Gross Margin: With respect to any Adjustable Rate Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note and the related Mortgage Loan Schedule that is added to the Index on each Adjustment Date in accordance with the terms of the related Mortgage Note to determine the new Mortgage Interest Rate for such Mortgage Loan.

HUD: The United States Department of Housing and Urban Development or any successor thereto and any subdivisions thereof.

Index: With respect to any Adjustable Rate Mortgage Loan, the index identified on the Mortgage Loan Schedule and set forth in the related Mortgage Note for the purpose of calculating the Mortgage Interest Rate thereon.

Interest Only Loan: A Mortgage Loan purchased pursuant to this Agreement as to which the related Mortgage Note provides for the payment of interest only during the life of the loan, and a payment of the full amount of the principal upon the maturity of the Mortgage Loan.

NY1 1021682v9

Lender Paid Mortgage Insurance Policy Program or LPMI Policies: A program or policy in which, for any Mortgage Loan underwritten with an LTV greater than 80% and less than 100%, the owner or servicer of such Mortgage Loan is responsible for the premiums associated with the mortgage insurance policy.

Loan-to-Value Ratio or LTV: With respect to any Mortgage Loan, the ratio of the original outstanding principal amount of the Mortgage Loan plus, with respect to any second lien Mortgage Loan, the outstanding principal amount of any related First Lien as of the date of origination of such mortgage loan, to (i) with respect to a Refinanced Mortgage Loan, the Appraised Value of the related Mortgaged Property at origination, and (ii) with respect to all other Mortgage Loans, the lesser of the Appraised Value of the related Mortgaged Property at origination and the purchase price of the related Mortgaged Property.

Maximum Mortgage Interest Rate: With respect to each Adjustable Rate Mortgage Loan, a rate that is set forth in the related Mortgage Note and is the maximum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be increased.

Minimum Mortgage Interest Rate: With respect to each Adjustable Rate Mortgage Loan, a rate that is set forth in the related Mortgage Note and is the minimum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be decreased.

Monthly Payment: The scheduled monthly payment of principal and interest on a Mortgage Loan which is payable by a Mortgagor from time to time under the related Mortgage Note.

Mortgage Interest Rate: The annual rate at which interest accrues on any Mortgage Loan in accordance with the provisions of the related Mortgage Note.

Periodic Rate Cap: With respect to each Adjustable Rate Mortgage Loan and any Adjustment Date therefor, a number of percentage points per annum that is set forth in the related Mortgage Note, which is the maximum amount by which the Mortgage Interest Rate for such Mortgage Loan may increase (without regard to the Maximum Mortgage Interest Rate) or decrease (without regard to the Minimum Mortgage Interest Rate) on such Adjustment Date from the Mortgage Interest Rate in effect immediately prior to such Adjustment Date, which may be a different amount with respect to the first Adjustment Date.

Prepayment Penalty: With respect to any Mortgage Loan, any prepayment penalty or premium thereon payable in connection with a principal prepayment on such Mortgage Loan pursuant to the terms of the related Mortgage Note.

Primary Mortgage Insurance Policy: Each policy of primary mortgage insurance represented to be in effect pursuant to Part III, representation 42 in this Schedule 1, or any replacement policy therefor obtained by the Servicer.

Qualified Appraiser: With respect to each Mortgage Loan, an appraiser, duly appointed by the Seller, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan, and such appraiser and the appraisal made by such

1-3

NY1 1021682v9

appraiser both satisfy the requirements of Fannie Mae and Freddie Mac and Title XI of FIRREA and the regulations promulgated thereunder, all as in effect on the date the Mortgage Loan was originated.

Qualified Insurer:  An insurance company duly qualified as such under the laws of the states in which the Mortgaged Properties are located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided by the insurance policy issued by it, approved as an insurer by Fannie Mae and Freddie Mac.

Refinanced Mortgage Loan:  A Mortgage Loan which was made to a Mortgagor who owned the Mortgaged Property prior to the origination of such Mortgage Loan and the proceeds of which were used in whole or part to satisfy an existing mortgage.

REMIC:  A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

SAIF:  The Savings Association Insurance Fund, or any successor thereto.

**ARTICLE II:**
**REPRESENTATIONS AND WARRANTIES REGARDING**
**THE SELLER AND THE SERVICER**

The party named as Seller in the introduction hereto, in its capacity as Seller and Servicer, represents, warrants and covenants to the Purchaser that as of each Closing Date or as of such date specifically provided herein:

1. **Organization, Licensing**.  The Seller is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization.  The Seller is duly qualified, licensed, registered and otherwise authorized under all applicable federal, state and local laws, laws, regulations and orders, and meets the minimum capital requirements, if applicable, set forth by any applicable Regulatory Authority, by virtue of any of the activities conducted, or property owned, by the Seller.  The Seller is in good standing under the laws of each state in which any Mortgaged Property is located or is otherwise exempt under applicable law from such licensing or qualification, and in any event the Seller is in compliance with the laws of any such state to the extent necessary to ensure the enforceability of each Mortgage Loan and the servicing of the Mortgage Loans in accordance with the terms of this Agreement.

2. **Approved by Fannie Mae, Freddie Mac or HUD or Bank/S&L**. The Seller is either (a) an approved seller or seller/servicer of residential mortgage loans in good standing to sell mortgage loans to and service mortgage loans for Fannie Mae or Freddie Mac or HUD, with such facilities, procedures and personnel necessary for the sound servicing of such mortgage loans (such approval must permit the lender to buy, sell, hold or originate mortgage loans) or (b) a bank or savings and loans association with deposits insured by FDIC.  No event has occurred which would make the Seller unable to comply with

1-4

eligibility requirements or which would require notification to any one of Fannie Mae, Freddie Mac, HUD or any Regulatory Authority, as applicable.

3. **Authority, Execution, Enforceability**.  The Seller has the full power and authority and legal right to hold, transfer and convey each Mortgage Loan, to sell each Mortgage Loan and to execute, deliver and perform, and to enter into and consummate all transactions contemplated by this Agreement and to·conduct its business as presently conducted; the Seller has duly authorized the execution, delivery and performance of this Agreement and any agreements contemplated hereby, has duly executed and delivered this Agreement, and any agreements contemplated hereby, and this Agreement and each Assignment of Mortgage to the Purchaser and any agreements contemplated hereby, constitute the legal, valid and binding obligations of the Seller, enforceable against it in accordance with their respective terms, except as such enforceability may be limited by bankruptcy, insolvency, moratorium, reorganization and similar laws, and by equitable principles affecting the enforceability of the rights of creditors; and all requisite corporate action has been taken by the Seller to make this Agreement and all agreements contemplated hereby valid and binding upon the Seller in accordance with their terms.

4. **No Conflicts**. Neither the execution and delivery of this Agreement, the sale of the Mortgage Loans to the Purchaser, the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement will conflict with any of the terms, conditions or provisions of the Seller's charter or by-laws or materially conflict with or result in a material breach of any of the terms, conditions or provisions of any legal restriction or any agreement or instrument to which the Seller is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the material violation of any law, rule, regulation, order, judgment or decree to which the Seller or its property is subject or impair the ability of the Purchaser to realize on the Mortgage Loans, or impair the value of the Mortgage Loans.

5. **No Litigation**.  There is no litigation, suit, proceeding or investigation pending or threatened, or any order or decree outstanding against the Seller, any Principal of the Seller, any Affiliate of the Seller, or otherwise, which is reasonably likely to have a material adverse effect on the sale of the Mortgage Loans, the execution, delivery, performance or enforceability of this Agreement, or which is reasonably likely to have a Material Adverse Effect on the Seller. The Seller shall immediately notify the Purchaser and the Program Administrator of any litigation, suit, proceeding or investigation pending or threatened, or any order or decree outstanding, which is reasonably likely to have a material adverse effect on the sale or value of the Mortgage Loans, the execution, delivery, performance or enforceability of this Agreement, or which is reasonably likely to have a Material Adverse Effect on the Seller.

6. **No Consents**.  No consent, approval, authorization or order of any Regulatory Authority is required for the execution, delivery and performance by the Seller of or compliance by the Seller with this Agreement, except for consents, approvals, authorizations and orders which have been obtained.

NY1 1021682v9

7. **Ordinary Course, No Bulk Transfer**.  The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller, and the transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller pursuant to this Agreement are not subject to bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction.

8. **Origination and Servicing**.  The origination and servicing practices with respect to each Mortgage Note and Mortgage have been legal and in accordance with applicable laws and regulations, and in all material respects proper and prudent in the mortgage origination and servicing business.

9. **Escrow Accounts**.  With respect to escrow deposits and payments that the Seller is entitled to collect, all such payments are in the possession of, or under the control of, the Seller, and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made.  All escrow payments have been collected and are being maintained in full compliance with applicable state and federal law and the provisions of the related Mortgage Note and Mortgage.  As to any Mortgage Loan that is the subject of an escrow, escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every escrowed item that remains unpaid and has been assessed but is not yet due and payable. No escrow deposits or other charges or payments due under the Mortgage Note have been capitalized under any Mortgage or the related Mortgage Note.

10. **Interest Rate Adjustments**.  All Mortgage Interest Rate adjustments have been made in strict compliance with state and federal law and the terms of the related Mortgage Note. Any interest required to be paid pursuant to state and local law has been properly paid and credited;

11. **No Adverse Selection**.  The Seller has not used selection procedures that identified the Mortgage Loans as being less desirable or valuable than other comparable mortgage loans in the Seller's portfolio at the Cut-off Date;

12. **Performance of Covenants**.  The Seller does not believe, nor does it have any cause or reason to believe, that it cannot perform each and every covenant contained in this Agreement.

13. **Solvent**.  The Seller is solvent and the sale of the Mortgage Loans will not cause the Seller to become insolvent.  The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of the Seller's creditors;

14. **Information Provided Is True**.  No statement, tape, diskette, form, report or other document prepared by, or on behalf of, the Seller pursuant to this Agreement or in connection with the transactions contemplated hereby, contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.  The Seller has prudently originated and underwritten each Mortgage Loan.

15. **Financial Statements Are Accurate**.  The Seller has delivered to the Purchaser or its designee financial statements as to its last two complete fiscal years.  All such financial

1-6

NY1 1021682v9

statements (i) are as of the dates and for the periods referenced to therein, complete and correct in all material respects, (ii) fairly present the pertinent results of operations and changes in financial position for each of such periods and the financial position at the end of each such period of the Seller and its subsidiaries and (iii) have been prepared in accordance with GAAP consistently applied throughout the periods involved, except as set forth in the notes thereto. There has been no change in the business, operations, financial condition, properties or assets of the Seller since the date of the Seller's financial statements that would have a Material Adverse Effect on its ability to perform its obligations under this Agreement. Additionally, except as disclosed on such financial statements, the Seller is not subject to any contingent liabilities or commitments that, individually or in the aggregate, have the possibility of having a Material Adverse Affect on the Seller.

16. **No Brokers**. The Seller has not dealt with any broker, investment banker, agent or other person that may be entitled to any commission or compensation in connection with the sale of the Mortgage Loans.

17. **Broker Fees**. With respect to any broker fees collected and paid on any of the Mortgage Loans, all broker fees have been properly assessed to the borrower and no claims will arise as to broker fees that are double charged and for which the borrower would be entitled to reimbursement.

18. **No Events of Default**. No Event of Default, an event or condition that, upon the giving of notice or the passage of time, or both, would become an Event of Default, has occurred and is continuing.

19. **No Coercion**. The sale of the Mortgage Loans referred to thereon is being entered into by the Seller voluntarily, and in the absence of any omission of fact, undue influence, duress, coercion or similar constraint and is intended to be a sale.

20. **Fair Consideration**. The consideration received by the Seller upon the sale of the Mortgage Loans under this Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans.

21. **Business History**. The Seller has been in business for at least two consecutive years prior to the date hereof.

22. **Good Standing with Takeout Investors**. The Seller is in good standing with all Approved Takeout Investors.

23. **Compliance with Laws**. The Seller has complied with all applicable credit and consumer protection laws, rules and regulations, including but not limited to the Fair and Accurate Credit Transactions Act; and

(y) The Seller has and at all times shall have on and following the date of sale of Mortgage Loans to the Purchaser sufficient and adequate financial resources to perform and honor its obligations as required under this Agreement, including without limitation, the Seller's repurchase obligations under Article III and the

NY1 1021682v9

Seller's (in its capacity as Seller and Servicer) indemnification obligations under Section 6.01 of this Agreement.

(z) The Seller is not an "affiliate" (as defined in Section 101 of the U.S. Bankruptcy Code) of the Custodian.

## ARTICLE III:
## REPRESENTATIONS AND WARRANTIES REGARDING
## INDIVIDUAL MORTGAGE LOANS

The Seller hereby represents and warrants to the Purchaser, as to each Mortgage Loan, as of the applicable Closing Date as follows:

### Representations Regarding Ownership, Origination

1. **Seller Owns Mortgage Loan**. The Seller is the owner of record and holder of each Mortgage Loan and the indebtedness evidenced by the Mortgage Note, and upon the sale of the Mortgage Loans to the Purchaser, the Seller will retain the servicing files with respect thereto in trust for the Purchaser only for the purpose of servicing and supervising the servicing of each Mortgage Loan. Immediately prior to the transfer and assignment to the Purchaser on the Closing Date, the Mortgage Loan, including the Mortgage Note and the Mortgage were not subject to an assignment or pledge, and the Seller had good and marketable title to and was the sole owner thereof and had full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest and has the full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign the Mortgage Loan pursuant to this Agreement.

2. **Seller Selling Mortgage Loan**. Following the sale of the Mortgage Loan, the Purchaser will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest. The Seller intends to relinquish all rights to possess, control and monitor the Mortgage Loan, except for the purposes of servicing the Mortgage Loan as set forth in this Agreement.

3. **Origination in Accordance with Underwriting Standards**. The Mortgage Loan was originated by or for the Seller. The Mortgage Loan complies with all the terms, conditions and requirements of the related Underwriting Standards in effect at the time of origination of such Mortgage Loan. The Mortgage Notes and Mortgages (exclusive of any riders) are on forms generally acceptable to Fannie Mae or Freddie Mac or, if Fannie Mae and Freddie Mac do not have forms for mortgage loans having similar terms as a Mortgage Loan, the related Mortgage Note and Mortgage are on forms generally acceptable to prudent lenders in the secondary mortgage market.

### Representations Regarding Terms of Mortgage Loans

4. **Mortgage Loan Schedule**.  The information set forth in the Mortgage Loan Schedule, including any diskette or other related data tapes sent to the Purchaser or its designee, is complete, true and correct in all material respects as of the Cut-off Date.

5. **Interest Rate Net of Premium**.  The mortgage interest rate for the Mortgage Loan as set forth in the Mortgage Loan Schedule is net of any premium owed for a Primary Mortgage Insurance Policy.

6. **Mortgage Note Date**.  The date listed on the Mortgage Note for the Mortgage Loan occurred not more than 30 days prior to the Closing Date.

7. **Original Term**.  The Mortgage Loans have an original term to maturity of not more than 40 years, with interest payable in arrears on the first day of each month.

8. **Monthly Payment Dates**.  Monthly Payments under the Mortgage Note are due and payable on the first day of each month.

9. **No Simple Interest Accrual**.  No Mortgage Loan provides for the accrual of interest on a simple interest basis.

10. **Minimum FICO**.  No second lien Mortgage Loan has a FICO score less than 600.

11. **Payment Start Date**.  Payments on each Mortgage Loan will commence no more than sixty (60) days after the funds were disbursed in connection with the Mortgage Loan.

12. **LTV**.  No Mortgage Loan had a Loan-to-Value Ratio at the time of origination of more than 100%. No second lien Mortgage Loan has an LTV in excess of 100%. No second lien Mortgage Loan has an Equity LTV in excess of 100%.

13. **No Convertible Mortgage Loans**.  No Mortgage Loan is a Convertible Mortgage Loan.

14. **No Construction Loans, Trade-In or Exchanges**.  No Mortgage Loan was made in connection with the construction or rehabilitation of a Mortgaged Property or facilitating the trade-in or exchange of a Mortgaged Property.

15. **Amortization**.  With the exception of Interest Only Loans, each Mortgage Note requires a Monthly Payment which is sufficient to fully amortize the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate; provided, however, in the case of a balloon Mortgage Loan, the Mortgage Loan matures at least five (5) years after the first payment date thereby requiring a final payment of the outstanding principal balance prior to the full amortization of the Mortgage Loan.  No Mortgage Loan contains terms or provisions which would result in negative amortization.

16. **No Future Disbursements**.  The proceeds of the Mortgage Loan have been fully disbursed and, other than with respect to future draws on a Mortgage Loan that is a home equity line of credit, there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and

expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid or are in the process of being paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage.

17. **Enforceability**.  The Mortgage Note and the related Mortgage are original and genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in all respects in accordance with its terms subject to bankruptcy, insolvency, moratorium, reorganization and other laws of general application affecting the rights of creditors and by general equitable principles and the Seller has taken all action necessary to transfer such rights of enforceability to the Purchaser.  All parties to the Mortgage Note and the Mortgage had the legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage.  The Mortgage Note and the Mortgage have been duly and properly executed by such parties.   No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place on the part of the Seller or the Mortgagor, or, on the part of any other party involved in the origination of the Mortgage Loan.

18. **No Default**.  There is no default, breach, violation or event of acceleration existing under the Mortgage or the related Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event permitting acceleration; and neither the Seller nor any prior mortgagee has waived any default, breach, violation or event permitting acceleration. With respect to each second lien Mortgage Loan, (i) the First Lien is in full force and effect, (ii) there is no default, breach, violation or event of acceleration existing under such prior mortgage or the related Mortgage Note, (iii) no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration thereunder, and either (A) the prior mortgage contains a provision which allows or (B) applicable law requires, the mortgagee under the second lien Mortgage Loan to receive notice of, and affords such mortgagee an opportunity to cure any default by payment in full or otherwise under the prior mortgage.

19. **No Impairment or Waiver**.  The Seller guarantees that terms of each Mortgage Note and the Mortgage delivered to the Purchaser have not been impaired, waived, altered, or modified in any respect, unless approved in writing by the Purchaser.  No Mortgagor has been released, in whole or in part, from the terms thereof except in connection with an assumption agreement and which assumption agreement is part of the Mortgage File and the terms of which are reflected in the Mortgage Loan Schedule; the substance of any such waiver, alteration or modification has been approved by the issuer of any related Primary Mortgage Insurance Policy and title insurance policy, to the extent required by the related policies.

20. **No Release**.  The Mortgage has not been released, rescinded, satisfied, canceled or subordinated, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part.  The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would

NY1 1021682v9

cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor.

21. **No Set-Off or Defenses**.  The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render the Mortgage Note or Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto; and the Mortgagor was not a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated.

**Representations Regarding Security Interest and Liens**

22. **Valid Lien**.  With respect to any first lien Mortgage Loan, the related Mortgage is a valid, subsisting, enforceable and perfected first lien on the Mortgaged Property and, with respect to any second lien Mortgage Loan, the related Mortgage is a valid, subsisting, enforceable and perfected second lien on the Mortgaged Property, including for Mortgage Loans that are not Co-op Loans, all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems affixed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing securing the Mortgage Note's original principal balance.  The Mortgage and the Mortgage Note do not contain any evidence of any adverse security interest or other interest or right thereto.  Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates (1) with respect to any first lien Mortgage Loan, a valid, subsisting, enforceable and perfected first lien and first priority security interest and (2) with respect to any second lien Mortgage Loan, a valid, subsisting, enforceable and perfected second lien and second priority security interest, in each case, on the property described therein, and the Seller has the full right to sell and assign the same to the Purchaser.

23. **No Adverse Liens**.  Such lien is free and clear of all adverse claims, liens and encumbrances having priority over the first or second lien, as applicable, of the Mortgage (including mechanics' or similar liens or claims which have been filed for work, labor or material, or rights outstanding that under law could give rise to such liens) subject only to (1) with respect to any second lien Mortgage Loan, the related First Lien, (2) the lien of non-delinquent current real property taxes and assessments not yet due and payable, (3) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording which are acceptable to mortgage lending institutions generally and either (A) which are referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan, or (B) which do not adversely affect the appraised value of the Mortgaged Property as set forth in such appraisal, and (4) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

NY1 1021682v9

24. **Taxes Paid**. All taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or escrow funds have been established in an amount sufficient to pay for every such escrowed item which remains unpaid and which has been assessed but is not yet due and payable.

25. **Due on Sale Provision**. The Mortgage contains the usual and enforceable provisions of the originator at the time of origination for the acceleration of the payment of the unpaid principal amount of the Mortgage Loan if the related Mortgaged Property is sold without the prior consent of the mortgagee thereunder.

26. **Adequate Realization of Security**. The related Mortgage contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the Mortgaged Property. There is no homestead or other exemption available to the Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage subject to applicable federal and state laws and judicial precedent with respect to bankruptcy and right of redemption.

27. **Mortgage as Sole Security**. The related Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to above and such collateral does not serve as security for any other obligation.

28. **Mortgagor Is Solvent**. With respect to each Mortgage Loan, the Mortgagor is not insolvent or in bankruptcy and the Seller has no knowledge of any circumstances or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that could reasonably be expected to cause investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or materially adversely affect the value or marketability of the Mortgage Loan.

29. **Assignment of Mortgage to Purchaser**. The Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located.

30. **No Default on First Lien**. As of the Closing Date, the Seller has not received a notice of default of a First Lien which has not been cured.

31. **Mortgage as Deed of Trust**. If the Mortgage constitutes a deed of trust, a trustee, authorized and duly qualified if required under applicable law to act as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses, except as may be required by local law, are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale or attempted sale after default by the Mortgagor.

NY1 1021682v9

**Representations Regarding Legal Compliance and Predatory Lending Practices**

32. **Compliance with Laws.**  Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws applicable to the Mortgage Loan have been complied with in all material respects.  The Seller shall maintain in its possession, available for the Purchaser's (or its designee's) inspection, and shall deliver to the Purchaser or its designee upon demand, evidence of compliance with all such requirements.

33. **Disclosure to Mortgagor.**  The Mortgagor has received all disclosure materials required by applicable law with respect to the making of such mortgage loans and the Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by applicable law with respect to the making of adjustable rate mortgage loans. The Servicer shall maintain such statement in the servicing file.

34. **Credit Reporting.**  The Servicer for each Mortgage Loan shall fully furnish, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company, on a monthly basis.

35. **Anti-Money Laundering Laws.**  The Seller has complied with all applicable anti-money laundering laws and regulations, including without limitation the USA Patriot Act of 2001 (collectively, the "Anti-Money Laundering Laws"). The Seller has established an adequate anti-money laundering compliance program as required by the Anti-Money Laundering Laws, has conducted the requisite due diligence in connection with the origination of each Mortgage Loan for purposes of the Anti-Money Laundering Laws, including with respect to the legitimacy of the applicable Mortgagor and the origin of the assets used by such Mortgagor to purchase the property in question, and maintains, and will maintain, sufficient information to identify the applicable Mortgagor for purposes of the Anti-Money Laundering Laws.

36. **HOEPA/High Cost Loans.**  No Mortgage Loan is subject to, covered by or in violation of the provisions of the Homeownership and Equity Protection Act of 1994 as amended or is considered or classified as a "covered," "high cost," "high-cost home," "high-risk home," "threshold," "predatory" or "abusive" loan (or similarly classified loans using different terminology under a law imposing heightened scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees) under any other state, federal, county or municipal laws or ordinances, statutes or regulations providing for "assignee" or "originator" liability to holders of such mortgage loans. No Mortgage Loan is a "High Cost Loan" or "Covered Loan", as applicable, as such terms are defined in the Standard & Poor's LEVELS® Glossary, Appendix E.

37. **Single-Premium Credit Insurance Policies.**  None of the proceeds of the Mortgage Loan were used to finance single-premium credit insurance policies.

NYI 1021682v9

38. **Texas Refinance Loans**. Each Mortgage Loan originated in the state of Texas pursuant to Article XVI, Section 50(a)(6) of the Texas Constitution (a "Texas Refinance Loan") has been originated in compliance with the provisions of Article XVI, Section 50(a)(6) of the Texas Constitution, Texas Civil Statutes and the Texas Finance Code. All notices, acknowledgments and disclosure statements required by Section 50, Article XVI of the Texas Constitution applicable to Texas Home Equity Loans are contained in the Mortgage File for each such Mortgage Loan.

39. **Prepayment Penalties**. With respect to each Mortgage Loan that contains a Prepayment Penalty, such Prepayment Penalty is enforceable and will be enforced by the Seller, and such Prepayment Penalty is permitted pursuant to federal, state and local law. No Mortgage Loan will impose a prepayment penalty for a term in excess of three years from the date such Mortgage Loan was originated.

**Representations Regarding Insurance**

40. **Hazard Insurance**. All buildings or other customarily insured improvements upon the Mortgaged Property are insured by an insurer acceptable under the Fannie Mae Guides, against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Fannie Mae Guides or by Freddie Mac, including flood insurance if required under the National Flood Insurance Act of 1968 or the National Flood Insurance Act of 1973, as amended. All such standard hazard policies are in full force and effect and on the date of origination contained a standard mortgagee clause naming the Seller and its successors in interest and assigns as loss payee and such clause is still in effect and all premiums due thereon have been paid. Such policy was issued by an insurer acceptable under Fannie Mae or Freddie Mac guidelines. The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and upon the Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at the Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor.

41. **Title Insurance**. Each Mortgage Loan that is not a Co-op Loan is covered by an ALTA lender's title insurance policy or other generally acceptable form of policy or insurance acceptable to Fannie Mae or Freddie Mac, issued by a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring (subject to the exceptions contained in Part III, representation 23, subsections (1), (2), (3) and (4) in this Schedule 1) the Seller, its successors and assigns, as to the first or second, as applicable, priority lien of the Mortgage in the original principal amount of the Mortgage Loan. Where required by applicable state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. The Seller, its successors and assigns, are the sole insureds of such lender's title insurance policy, such title insurance policy has been duly and validly endorsed to the Purchaser or the assignment to the Purchaser of the Seller's interest therein does not require the consent of or notification to the insurer and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement. Additionally, such lender's title insurance policy affirmatively insures

1-14

NY1 1021682v9

ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy.

42. **Primary Mortgage Insurance**. Except for Mortgage Loans so noted in the Mortgage Loan Schedule or which are underwritten in accordance with the Lender Paid Mortgage Insurance Policy Program, if a Mortgage Loan has an LTV greater than 80%, the excess of the principal balance of the Mortgage Loan over 80% of the Appraised Value, with respect to a Refinanced Mortgage Loan, or the lesser of the Appraised Value or the purchase price of the Mortgaged Property, with respect to a purchase money Mortgage Loan, is and will be insured as to payment defaults by a Primary Mortgage Insurance Policy issued by a Qualified Insurer. All provisions of such Primary Mortgage Insurance Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. No action, inaction, or event has occurred and no state of facts exists that has, or will result in the exclusion from, denial of, or defense to coverage under any Primary Mortgage Insurance Policy (including, without limitation, any exclusions, denials or defenses which would limit or reduce the availability of the timely payment of the full amount of the loss otherwise due thereunder to the insured) whether arising out of actions, representations, errors, omissions, negligence, or fraud of the Seller, or for any other reason under such coverage. Any Mortgage Loan subject to a Primary Mortgage Insurance Policy obligates the Mortgagor thereunder to maintain the Primary Mortgage Insurance Policy and to pay all premiums and charges in connection therewith.

**Representations Regarding Mortgage Property**

43. **Mortgaged Property**. As to Mortgage Loans that are not Co-op Loans and that are not secured by an interest in a leasehold estate, the Mortgaged Property is located in the state identified in the Mortgage Loan Schedule and consists of a single parcel of real property with a detached single family residence erected thereon, or a townhouse, or a two-to four-family dwelling, or an individual condominium unit in a condominium project, or an individual unit in a planned unit development or a de minimis planned unit development, provided, however, that no residence or dwelling is a single parcel of real property with a cooperative housing corporation erected thereon, or a mobile home.

44. **Condition of Mortgaged Property**. The Mortgaged Property is not subject to any material damage by waste, fire, earthquake, windstorm, flood or other casualty. At origination of the Mortgage Loan there was, and there currently is, no proceeding pending for the total or partial condemnation of the Mortgaged Property. There have not been any condemnation proceedings with respect to the Mortgaged Property and there are no such proceedings scheduled to commence at a future date.

45. **Improvements**. All improvements subject to the Mortgage which were considered in determining the Appraised Value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property (and wholly within

NYI 1021682v9

the project with respect to a condominium unit) and no improvements on adjoining properties encroach upon the Mortgaged Property except those which are insured against by the title insurance policy referred to in Part III, representation 41 in this <u>Schedule 1</u> and all improvements on the property comply with all applicable zoning and subdivision laws and ordinances.

46. **Lawful Occupation**. As of the date of origination of the Mortgage Loan, the Mortgaged Property was lawfully occupied under applicable law, and all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities.

47. **No Commercial Property**. As of the date of origination, no portion of the Mortgaged Property was used for commercial purposes, and since the date of origination no portion of the Mortgaged Property has been used for commercial purposes.

48. **Condos, Coops and PUDs Meet the Underwriting Standards**. If the Mortgaged Property is a condominium unit or a planned unit development (other than a de minimis planned unit development), or stock in a cooperative housing corporation, such condominium, cooperative or planned unit development project meets the Seller's eligibility requirements as set forth in the Seller's Underwriting Standards.

49. **Environmental Laws**. There is no pending action or proceeding directly involving the Mortgaged Property in which compliance with any environmental law, rule or regulation is an issue; there is no violation of any environmental law, rule or regulation with respect to the Mortgaged Property. There does not exist on the Mortgaged Property any hazardous substances, hazardous wastes or solid wastes, as such terms are defined in the Comprehensive Environmental Response Compensation and Liability Act, the Resource Conservation and Recovery Act of 1976, or other federal, state or local environmental legislation. Nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of said property.

50. **Appraisal**. The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the final approval of the mortgage loan application by a Qualified Appraiser, who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan, and the appraisal and appraiser both satisfy the requirements of Fannie Mae or Freddie Mac and Title XI of FIRREA and the regulations promulgated thereunder, all as in effect on the date the Mortgage Loan was originated. The appraisal is in a form acceptable to Fannie Mae or Freddie Mac.

**Representations with Respect to Co-Op Loans**

51. **Security Interest in Co-op Shares**. With respect to each Co-op Loan, the related Mortgage is a valid, enforceable and subsisting first security interest on the related

1-16

cooperative shares securing the related cooperative note, subject only to (a) liens of the cooperative for unpaid assessments representing the Mortgagor's pro rata share of the cooperative's payments for its blanket mortgage, current and future real property taxes, insurance premiums, maintenance fees and other assessments to which like collateral is commonly subject and (b) other matters to which like collateral is commonly subject which do not materially interfere with the benefits of the security intended to be provided by any applicable security agreement. There are no liens against or security interest in the cooperative shares relating to each Co-op Loan (except for unpaid maintenance, assessments and other amounts owed to the related cooperative which individually or in the aggregate will not have a material adverse effect on such Co-op Loan), which have priority over the Seller's security interest in such cooperative shares.

52. **UCC Search for Co-op Loans**. With respect to each Co-op Loan, a search for filings of financing statements has been made by a company competent to make the same, which company is acceptable to Fannie Mae and qualified to do business in the jurisdiction where the cooperative unit is located, and such search has not found anything which would materially and adversely affect the Co-op Loan.

53. **Cooperative Corporation**. With respect to each Co-op Loan, the related cooperative corporation that owns title to the related cooperative apartment building is a "cooperative housing corporation" within the meaning of Section 216 of the Code, and is in material compliance with applicable federal, state and local laws which, if not complied with, could have a material adverse effect on the Mortgaged Property.

54. **Co-op Shares May Be Freely Pledged**. With respect to each Co-op Loan, there is no prohibition against pledging the shares of the cooperative corporation or assigning the Co-op Lease.

**Representations with Respect to the Mortgage Files**

55. **Mortgage File**. The Mortgage File contains all required Mortgage Loan Documents and all such documents are complete and accurate.

56. **Mortgagor Information Is True**. All information supplied by, on behalf of, or concerning the Mortgagor is true, accurate and complete and does not contain any statement that is or will be inaccurate or misleading in any material respect;

57. **Delivery of Documents**. Except as provided in Section 2.07, the Mortgage Note, the Mortgage, the Assignment of Mortgage and the other documents set forth in Exhibit A and required to be delivered on the related Closing Date have been delivered to the Purchaser or its designee.

58. **Lost Mortgage Note Affidavit**. With respect to any Mortgage Loan as to which an affidavit has been delivered to the Purchaser certifying that the original Mortgage Note has been lost or destroyed and not been replaced, if such Mortgage Loan is subsequently in default, the enforcement of such Mortgage Loan will not be materially adversely affected by the absence of the original Mortgage Note.

NY1 1021682v9

**Representations with Respect to Second Liens**

59. **Second Lien Notices**. With respect to any second lien Mortgage Loan, the Seller has not received notice of: (1) any proceeding for the total or partial condemnation of any Mortgaged Property, (2) any subsequent, intervening mortgage, lien, attachment, lis pendens or other encumbrance affecting any Mortgaged Property or (3) any default under any mortgage, lien or other encumbrance senior to each Mortgage.

60. **Consents for Second Liens**. Either (a) no consent for the second lien Mortgage Loan is required by the holder of the related first lien or (b) such consent has been obtained and is contained in the Mortgage File.

61. **Notice of Second Lien**. With respect to any second lien Mortgage Loan, where required or customary in the jurisdiction in which the Mortgaged Property is located, the original lender has filed for record a request for notice of any action by the senior lienholder under the related First Lien, and the original lender has notified any senior lienholder in writing of the existence of the second lien Mortgage Loan and requested notification of any action to be taken against the Mortgagor by the senior lienholder.

**Miscellaneous Representations**

62. **Organization and Qualification of Prior-Interested Parties**. All parties which have had any interest in the Mortgage, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (A) in compliance with any and all applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (B) (1) organized under the laws of such state, or (2) qualified to do business in such state, or (3) federal savings and loan associations or national banks or a Federal Home Loan Bank or savings bank having principal offices in such state, or (4) not doing business in such state.

63. **Originator Approved by HUD**. Each Mortgage Loan was originated by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to sections 203 and 211 of the National Housing Act, a savings and loan association, a savings bank, a commercial bank, credit union, insurance company or similar institution which is supervised and examined by a federal or state authority.

64. **No Buydown Provisions**. The Mortgage Loan does not contain "graduated payment" features; to the extent any Mortgage Loan contains any buydown provision, such buydown funds have been maintained and administered in accordance with, and such Mortgage Loan otherwise complies with, Fannie Mae/Freddie Mac requirements relating to buydown loans.

65. **Servicemembers Civil Relief Act**. The Mortgagor has not notified the Seller, and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Servicemembers Civil Relief Act.

66. **Accepted Servicing Practices**. Each Mortgage Loan has been serviced in all material respects in compliance with Accepted Servicing Practices.

1-18

67. **Ground Lease**. With respect to any ground lease to which a Mortgaged Property may be subject: (i) a true, correct and complete copy of the ground lease and all amendments, modifications and supplements thereto is included in the servicing file, and the Mortgagor is the owner of a valid and subsisting leasehold interest under such ground lease; (ii) such ground lease is in full force and effect, unmodified and not supplemented by any writing or otherwise except as contained in the Mortgage File; (iii) all rent, additional rent and other charges reserved therein have been fully paid to the extent payable as of the Closing Date; (iv) the Mortgagor enjoys the quiet and peaceful possession of the leasehold estate, subject to any sublease; (v) the Mortgagor is not in default under any of the terms of such ground lease, and there are no circumstances which, with the passage of time or the giving of notice, or both, would result in a default under such ground lease; (vi) the lessor under such ground lease is not in default under any of the terms or provisions of such ground lease on the part of the lessor to be observed or performed; (vii) the lessor under such ground lease has satisfied any repair or construction obligations due as of the Closing Date pursuant to the terms of such ground lease; (viii) the execution, delivery and performance of the Mortgage do not require the consent (other than those consents which have been obtained and are in full force and effect) under, and will not contravene any provision of or cause a default under, such ground lease; (ix) the ground lease term extends, or is automatically renewable, for at least five years beyond the maturity date of the related Mortgage Loan; and (x) the Purchaser has the right to cure defaults on the ground lease;

68. **Qualified Mortgage**. Each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulations Section 1.860G-2(a)(1);

69. **Real Estate Tax Service**. With respect to each Mortgage Loan, the Seller shall have obtained either (i) a life of loan transferable real estate tax service contract with a company reasonably acceptable to the Purchaser and shall assign such contract to the Purchaser or its designee or (ii) the Seller shall reimburse to the Purchaser or its designee the cost of obtaining such contract.

70. **Forward Commitment**. With respect to each Mortgage Loan having a Forward Commitment, the assignment of the related Forward Commitment to the Purchaser does not violate the terms of the Forward Commitment.

NYI 1021682v9

## EXHIBIT A

### CONTENTS OF MORTGAGE FILE

With respect to each Mortgage Loan, the Mortgage File shall include (and the Submission Package Documents shall consist of) each of the following items, which shall be available for inspection by the Purchaser, and which shall be retained by the Seller in the servicing file or delivered to the Purchaser or its designee pursuant to the Seller's Purchase, Warranties and Servicing Agreement.

1. The original Mortgage Note endorsed "Pay to the order of _____ without recourse," and signed in the name of the Seller by an authorized officer, with all intervening endorsements showing a complete chain of title from the originator to the Seller. If the Mortgage Loan was acquired by the Seller in a merger, the endorsement must be by "[Seller], successor by merger to the [name of predecessor]". If the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the endorsement must be by "[Seller] formerly known as [previous name]". If the original note is unavailable, seller will provide an affidavit of lost note (in form acceptable to the Purchaser) stating that the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note and indemnifying the Purchaser against any and all claims arising as a result of any person or entity claiming they are the holder of the note or that the note has been paid off and returned.

2. The original Mortgage, or a true certified copy.

3. The original or certified to be a true copy or if in electronic form identified on the Mortgage Loan Schedule, the certificate number, certified by the Seller, of the related primary mortgage insurance policy or lender-paid primary mortgage insurance policy, if required.

4. In the case of each Mortgage Loan that is not a MERS Mortgage Loan, the original Assignment, from the Seller in accordance with the Purchaser's instructions, which assignment shall, but for any blanks requested by the Purchaser, be in form and substance acceptable for recording. If the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the Assignment must be by "[Seller] formerly known as [previous name]".

5. With respect to Mortgage Loans that are not Co-op Loans, the original policy of title insurance, including riders and endorsements thereto, or if the policy has not yet been issued, a written commitment or interim binder or preliminary report of title issued by the title insurance or escrow company.

6. True certified copy of all intervening Assignments

7. True certified copy of each assumption, extension, modification, written assurance or substitution agreements, if applicable.

8. If the Mortgage Note or Mortgage or any other material document or instrument relating to the Mortgage Loan has been signed by a person on behalf of the Mortgagor, the original power of attorney or other instrument that authorized and empowered such person to sign

A-1

bearing evidence that such instrument has been recorded, if so required in the appropriate jurisdiction where the Mortgaged Property is located (or, in lieu thereof, a duplicate or conformed copy of such instrument, if applicable.

9.  With respect to a Co-op Loan: (i) a copy of the Co-op Lease and the assignment of such Co-op Lease to the originator of the Mortgage Loan, with all intervening assignments showing a complete chain of title and an assignment thereof by the Seller; (ii) the stock certificate together with an undated stock power relating to such stock certificate executed in blank; (iii) the recognition agreement in substantially the same form as standard a "AZTECH" form; (iv) copies of the financial statement filed by the originator as secured party and, if applicable, a filed UCC-3 Assignment of the subject security interest showing a complete chain of title, together with an executed UCC-3 Assignment of such security interest by the Seller in a form sufficient for filing if applicable.

10. The original of any guarantee executed in connection with the Mortgage Note if applicable.

11. The Forward Commitment, except with respect to each Uncovered Mortgage Loan.

12. The Warehouse Lender's Release if applicable.

13. Any other documents the Program Administrator may reasonably request at its sole discretion.

       With respect to each Mortgage Loan, the servicing file shall include each of the following items, which shall be available for inspection by the Purchaser. The following items are not included in the Submission Package Documents:

1.  Mortgage Loan closing statement (Form HUD-1) and any other truth-in-lending or real estate settlement procedure forms required by law.

2.  Residential loan application.

3.  Uniform underwriter and transmittal summary (Fannie Mae Form 1008) or reasonable equivalent.

4.  Credit report on the mortgagor.

5.  Business credit report, if applicable.

6.  Residential appraisal report and attachments thereto.

7.  Verification of employment and income except for Mortgage Loans originated under a Limited Documentation Program, all in accordance with the Seller's Underwriting Standards.

8.  Verification of acceptable evidence of source and amount of down payment, in accordance with the Seller's Underwriting Standards.

9.  Photograph of the Mortgaged Property (may be part of appraisal).

NY1 1021682v9

10. Survey of the Mortgaged Property, if any.

11. Sales contract, if applicable.

12. If available, termite report, structural engineer's report, water portability and septic certification.

13. Any original security agreement, chattel mortgage or equivalent executed in connection with the Mortgage.

14. Any ground lease, including all amendments, modifications and supplements thereto.

15. Any other document required to service the Mortgage Loans.

A-3

## EXHIBIT B

MORTGAGE SCHEDULE REQUIRED DATA FIELDS

**Required Data Fields**

| Data Field | Data Field |
| --- | --- |
| Originator Loan Number | Property Type (e.g. SFR, 2nd) |
| Borrower Last Name | Documentation Type |
| Borrower First Name | Rate Type (e.g. FX20) |
| Direct or Dry Funding | Amortization Type (e.g. Fixed, ARM) |
| Borrower Social Security Number | Balloon Note |
| Co-Borrower First Name | Piggy Back |
| Co-Borrower Last Name | Adjustable Rate Margin |
| Co-Borrower Social Security Number | Adjustment Frequency |
| Property Address | Payment Cap Annual |
| Property City | Rate Cap First |
| Property State | Rate Cap After First |
| Property Zip | Rate Max Lifetime |
| Property County | Negative Amortization Limit |
| Note Amount | Appraiser Name |
| Funded Amount | Appraisal Type |
| Wire to Close Amount | Valuation Type |
| Top Off Amount | Valuation Date |
| Note Term | Refi Purpose |
| Note Rate | Prior Note Date |
| Note Date | Prior Sales Price |
| Wire Amount | Cash Out Amount |
| Takeout Investor | Gross Income |
| Takeout Price | Job Length |
| Takeout Commitment Expiration | Recurring Payment |
| Takeout Commitment Number | Debt Ratio 1 |
| Appraised Value | Mortgage Insurance Coverage |
| Sales Price | Closing Agent Name |

B-1

NY1 1021682v9

Other Liens

LTV

CLTV

Lien Position

Occupancy

Credit Score

Seller

Builder

Mortgage Insurance Co.

Mortgage Servicer

Loan Type (e.g. CCFIX20)

Transaction Type (e.g. P, R)

Closing Agent Address

Closing Agent Account Number

Closing Agent Account Name

Closing Agent Bank Name

Closing Agent Bank ABA

Closing Agent Further Credit Account Name

Closing Agent Further Credit Account Number

Closing Agent Further Credit Bank Name

Closing Agent Further Credit Bank ABA

Wire Reference

FHA/VA Case Number (if applicable)

NY1 1021682v9

**EXHIBIT C**

INSURED CLOSING PROTECTION LETTER
**(to be in substantially the same form)**

ABC TITLE CO.
Address
City, State Zip
Tel:
Fax:

Mortgage Co Name
Address
City, State Zip
Attn:

Re:    Closing Protection Letter

When title insurance of ABC Title Insurance Company (the "Company") is provided to and/or specified by you in connection with the closings of real estate transactions in the State of _____ in which you are the seller, lessor or purchaser of an interest in land or a lender [accrual] by a mortgage or an assignee of a mortgage (including any other security instrument) of an interest in land, the Company, subject to the Conditions and Provisions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings, when such closings are conducted by:

John Doe, A Member of Attorney's Title Company
365 Jones Square
New York, NY 10010

("Approved Closer") and where such loss arises out of:

Failure of the Approved Closer to comply with your written closing instructions received by the Approved Closer prior to closing, to the extent that they relate to the particular transaction, and apply to:

1.    The status of the title to said interest in land or the validity, enforceability and priority of the lien of the mortgage on said interest in land, including the obtaining of such documents and the disbursements of funds, as are necessary to establish the evidence of title or lien; or

The obtaining of any other document, specifically required by you, but not to the extent that the instructions require a determination of the validity, enforceability or effectiveness of any other document; or

The collection and payment of funds due you; or

C-1

NYI 1021682v9

2.    Fraud or dishonesty of the Approved Closer in handling your funds or documents in connection with the closing.

As a Lender protected under the foregoing paragraph, your Originator in connection with a loan secured by a mortgage on a one to four family dwelling shall be protected as if this letter were addressed to your Originator.

Conditions and Provisions

The Company will not be liable to you for loss arising out of:

1.    Failure of the Approved Closer to comply with your closing instructions which require title insurance protection inconsistent with that as set forth in the title insurance commitment, binder, or preliminary report issued by the Company. Instructions, which require the removal of specific exceptions to title or compliance with the requirements contained in the commitment, binder, or preliminary report, shall not be deemed to be inconsistent. This paragraph shall not be applicable when a commitment, binder or preliminary report has not been requested by you prior to closing.

2.    Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except us shall result from failure of the Approved Closer to comply with your written instructions to deposit the funds in a bank which you designated by name.

3.    Mechanics' and other liens in connection with your purchase or lease or sale loan transactions, except to the extent that protection against these liens is afforded by a title insurance commitment, binder, preliminary report or policy of the Company.

When the Company shall reimburse you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of their rights of recovery.

Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by the Approved Closer shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance commitment, binder, preliminary report or policy of the Company.

Claims shall be made to the Company at its principal office at _____
_____.   When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of the prejudice.

NY1 1021682v9

Notwithstanding your instructions to the Approved Closer, nothing herein shall be construed to impose any liability on the Company on account of any consumer credit protection, truth-in-lending, or similar law, or the provisions of the Flood Disaster Protection Act of 1973, as stated.

The protection herein offered will apply only to those closings which occur within one year of the date of this letter.

Any previous issued closing protection letter or similar agreement for real estate transactions in the State of _____ written for Approved Closer is hereby cancelled except as to closings of your real estate transactions regarding which you have previously sent (or within 30 days hereafter send) written closing instructions to the Approved Closer.

ABC Title Company

By:_____
Title:

C-3

NYI 1021682v9

## EXHIBIT D

### FORM OF WAREHOUSE LENDER'S RELEASE

Ladies and Gentlemen:

We hereby release all right, interest or claim of any kind with respect to the mortgage loan(s) referenced below, such release to be effective automatically without any further action by any person, upon receipt of $_____, in one or more installments, from Wachovia Bank, National Association, in accordance with the wire instructions which we delivered to you in a letter dated _____, 200__, in immediately available funds.

| Loan # | Mortgagor | Street Address | City | State | Zip |
|--------|-----------|----------------|------|-------|-----|

Very truly yours,

[WAREHOUSE LENDER]

By:_____
Name:_____
Title:_____

D-1

NY1 1021682v9

## EXHIBIT E

### APPROVED TAKEOUT INVESTORS

| | Investor Name | Code |
|---|---|---|
| | Investor Name | Code |
| 1 | ABN Amro | AMRO |
| 2 | American General | AMGN |
| 3 | Bank of America | BOA |
| 4 | Bank One | BONE |
| 5 | Bear Stearns | BEAR |
| 6 | Branch Bank and Trust | BBT |
| 7 | Chevy Chase Bank | CCHM |
| 8 | Citibank | CITIBK |
| 9 | Commercial Federal Bank | CFMC |
| 10 | Countrywide Home Loans | CWFC |
| 11 | Credit Suisse First Boston | CSFB |
| 12 | Deutsche Bank | DEUT |
| 13 | Encore | ENC |
| 14 | E-Trade | ETRADE |
| 15 | Fannie Mae | FNMA |
| 16 | First Nationwide | FNWD |
| 17 | First Tennessee | FTENN |
| 18 | First Union | FUMC |
| 19 | Flagstar | FLAG |
| 20 | Freddie Mac | FHLMC |
| 21 | GE Capital | GECM |
| 22 | GMAC | GMAC |
| 23 | Goldman Sachs | GOLD |
| 24 | Green Point Savings Bank | GREEN |
| 25 | Guaranty Bank | GUAR |
| 26 | Homeside Lending | HOME |
| 27 | Homestar | HSTAR |
| 28 | HSBC | HSBC |
| 29 | Impac | IMPA |
| 30 | IndyMac | INDY |
| 31 | JP Morgan Chase | JPMC |
| 32 | KeyCorp | KEY |
| 33 | Lehman Brothers | LEHB |
| 34 | M&T Bank | M&T |
| 35 | Merrill Lynch | MERR |
| 36 | Morgan Stanley | MS |
| 37 | National City Bank | NCB |
| 38 | New Century | NCEN |
| 39 | Nomura Securities | NOMU |
| 40 | Novastar | NOVA |
| 41 | Ohio Savings Bank | OHIO |
| 42 | Popular | POP |
| 43 | Principal Residential | PRIN |
| 44 | Provident Funding | PROV |
| 45 | RBMG | RBMG |

NYI 1021682v9

| 46 | Regions Financial | REG |
| 47 | Saxon Mortgage | SAX |
| 48 | Suntrust Bank | SUNT |
| 49 | Temple Inland | TEMP |
| 50 | Thornburg Mortgage | TBMI |
| 51 | UBS Paine Webber | UBS |
| 52 | US Bank | USB |
| 53 | Union Federal | UNION |
| 54 | Vinning Sparks | VINNING |
| 55 | Washington Mutual Bank | WAMU |
| 56 | Wells Fargo Bank | WELLS |
| 57 | Winter Group (The) | TWG |
| 58 | WMC Mortgage Corp | WMC |
| 59 | First NLS | 1NLS |
| 60 | Option One | Option1 |
| 61 | Gateway bank, FSB | GATE |
| 62 | Alliance Bancorp | ALBC |
| 63 | CIT | CIT |
| 64 | RBS Greenwich Capital | RBSG |
| 65 | 1st NLS | 1NLS |
| 66 | First Central Savings Bank | FCSB |
| 67 | American Home Mortgage | AHM |

E-2

NY1 1021682v9